**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SPIN MASTER, LTD., | |
| Plaintiff, | Case No. 1:23-cv-07099-DEH |
| v. | |
| AOMORE-US et al., | |
| Defendants. | |

**OPPOSITION TO PLAINTIFF'S RENEWED**
**MOTION FOR ATTACHMENT AND SANCTIONS**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

    A.      The Parties and Asserted Patents ........................................................... 2

    B.      Relevant Procedural History ................................................................... 4

III.    PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED ......................... 6

    A.      Legal Standard ....................................................................................... 6

    B.      Plaintiff Does Not Argue that There Was Any Bad Faith (Because There Was None) ............................................................................................... 7

    C.      Plaintiff Has Not Demonstrated Any Fees Incurred as a Result of the Mistake ................................................................................................ 12

        1.      Plaintiff Has Not Shown (and Cannot Show) that Its Attachment Motion Would Have Been Granted "But For" TKD's Mistake ............... 13

        2.      Plaintiff Has Not Shown (and Cannot Show) That It Is Entitled to a Default Judgment, Nor that a One Month Delay Is a Basis for Fees ........ 15

IV.     CONCLUSION ................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*,
  No. 17-CV-00840 (S.D.N.Y. June 11, 2021), ECF No. 229 ...............................................9, 10

*Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*,
  No. 17-CV-00840 (VSB), 2021 WL 634717 (S.D.N.Y. Feb. 16, 2021) ......................9, 10, 11

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)...............................................................................................................7, 8

*Doncouse v. S.J.T. Prince LLC et al.*,
  No. 1:22-cv-00592-PGG-OTW (S.D.N.Y. Sept. 12, 2022)....................................................12

*Gesualdi v. Quadrozzi Equip. Leasing Corp.*,
  629 F. App'x 111 (2d Cir. 2015) ....................................................................................16, 17

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017)..............................................................................................7, 12, 13, 17

*Harvey v. Russell*,
  No. 7:18-cv-00097-EKD-JCH (W.D. Va. Sept. 5, 2019) ......................................................12

*Mazzei v. Money Store*,
  No. 22-1959, 2023 WL 6784415 (2d Cir. Oct. 13, 2023).........................................................7

*Melgar v. Pie Chatach 1776 LLC*,
  No. 1:23-cv-00917-OEM-JRC (E.D.N.Y. Aug. 15, 2023).....................................................11

*Negrito v. Buonaugurio*,
  836 F. App'x 36 (2d Cir. 2020) .............................................................................................15

*Palmer v. Simon's Agency, Inc.*,
  833 F. App'x 838 (2d Cir. 2020) .........................................................................................8, 11

*In re Plumeri*,
  434 B.R. 315 (S.D.N.Y. 2010)............................................................................................9, 11

*Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*,
  619 F.3d 207 (2d Cir. 2010)...................................................................................................16

*Smart Study Co. v. Acuteye-US*,
  620 F. Supp. 3d 1382 (S.D.N.Y. 2022),
  *appeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*,
  No. 22-1810-CV, 2023 WL 3220461 (2d Cir. May 3, 2023). .................................................15

*United States v. Seltzer*,
227 F.3d 36 (2d Cir. 2000) .................................................................................7, 8, 11

*Virginia Properties, LLC v. T-Mobile Ne. LLC*,
865 F.3d 110 (2d Cir. 2017) .......................................................................................7

*Williams v. Lutheran Medical Center et al.*,
No. 1:12-cv-01881-SJ-VVP (E.D.N.Y. Mar. 13, 2017), ECF No. 53 ......................9

*Williams v. Lutheran Med. Ctr.*,
776 F. App'x 730 (2d Cir. 2019) ..............................................................8, 9, 11

*Yukos Cap. S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020) .......................................................................................6

*Zhang v. Baidu.com Inc.*,
932 F. Supp. 2d 561 (S.D.N.Y. 2013) .....................................................................16

**Other Authorities**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil and Commercial Matters ("Hague Convention"), Article 15 .........................16

Tarter, Krinsky & Drogin LLP ("TKD") respectfully submits this memorandum in opposition to Plaintiff Spin Master, Ltd.'s ("Plaintiff") Renewed Motion for Attachment and Sanctions (ECF No. 60).[1]

## I.   INTRODUCTION

TKD made a mistake and, once discovered, immediately brought it to the Court's attention. Once again, TKD apologizes for any inconvenience that its mistake, made in good faith, may have caused.  However, no sanction is warranted.  Despite the Court's directive, Plaintiff has not (and cannot) show any harm, and sanctions are not warranted.  Rather, Plaintiff's motion and its failure to comply with the Court's directive to provide details demonstrate that the motion is without merit.  Plaintiff's conduct in this regard and as further detailed below has needlessly increased the costs of litigation.  It is also a waste of judicial resources.

The Court's Order permitting Plaintiff's Motion directed Plaintiff to "detail[] [its] requested relief, and the basis for any such request" (ECF No. 53), but Plaintiff has not done so. Plaintiff vaguely asserts that it "seeks an order awarding it the unnecessary fees that it has incurred" as a result of TKD's mistake (ECF No. 61, "Mot." at 1), but does not give *any* details as to what those fees might be (because there are none).  Rather, Plaintiff seeks to multiply the proceedings by kicking the can and setting a whole new "briefing schedule concerning the amount of such [unidentified] fees." (*Id.*)

Plaintiff is simply attempting to take advantage of a relatively minor mistake to absolve Plaintiff's own nearly *one year delay* in seeking emergency relief via an *ex parte* motion for a temporary restraining order ("TRO").  It is a complete sideshow designed to distract from

---

[1] Plaintiff has committed to withdrawing its renewed motion for an attachment as to Defendant Yucmed Store ("Yucmed").  As such, TKD does not address that aspect of Plaintiff's Motion on behalf of Yucmed, but reserves the right to put in a fulsome response in the event that the motion against Yucmed is not withdrawn.

Plaintiff's meritless claims.

For at least the reasons discussed herein, Plaintiff's Motion should be denied.

## II.     FACTUAL BACKGROUND

### A.     The Parties and Asserted Patents

Plaintiff is a Canadian company with its headquarters located in Toronto, Ontario, Canada. (*See* ECF No. 1, "Compl." ¶ 2.) Plaintiff is a serial plaintiff, who has initiated at least 25 federal lawsuits in the past year alone.  In this action, it alleges that it "is the exclusive licensee to all the rights and interests" in five related patents entitled "Wall Racer Toy Vehicles."  (*Id.*)  Plaintiff argues that "the wall-climbing feature" is the "unique" aspect of these patents (*see* ECF No. 35 at 3, 7, 15–18), but that argument is demonstrably false. Indeed, the patents themselves acknowledge that wall-climbing devices previously existed, but that the purported invention of the patents was a "carefully-shaped duct" that provides alleged benefits over the prior art devices.  (ECF No. 1-1, '897 Patent, Col. 1:37–56, 2:4–26.)  A brief review of the prior art readily reveals that the concept of a wall-climbing toy car was known since at least the 1970s, and such toys were marketed in the 1990s:



*S. R. Mickelberg Company's*
*Zero Gravity Vehicle Wall King*
Launched in 1991



*Gakken Co Ltd.'s*
*Cliff Blazer Zero Gravity Vehicle*
Launched in 1992





*"Vehicle With Vacuum Traction"*
Nov. 20, 1990
(U.S. Patent No. 4,971,591 to Raviv et al.)

*"Mobile toy with zero-gravity system"*
Mar. 16, 1993
(U.S. Patent No. 5,194,032 to Garfinkel)





*"Wall Climbing Devices"*
May 14, 1974
(U.S. Patent No. 3,810,515 to Ingro)

*"Vehicle Drawn by Suction Against the Surface of Travel"*- Dec. 16, 1975
(U.S. Patent No. 3,926,277 to Shino et al.)

Defendants "Leqiong," "Monkki," and "Onecemore" each operate an Amazon storefront under those names; Plaintiff identified their legal names as aliases in the case caption of its Complaint.  Defendant Yucmed also operates an Amazon storefront under that name, yet its legal name (available on its storefront, *see* ECF No. 69 at 4) is not included in the case caption of the Complaint.   Defendants "Aomore-US" and "Ropwol" are also alleged to operate Amazon storefronts under those names (*see* ECF No. 1, Compl. ¶¶ 3,7), yet the "Business Names" posted on those storefronts (*see* ECF No. 45-7) are not included in the case caption of the Complaint. Accordingly, there are only four legal names listed on the case caption of the Complaint (i.e., the names for Defendants Leqiong, Monkki, Onecemore, and Chenghai Lucky Boy Toys Co., Ltd.,

"the Originally Represented Defendants"); the other three defendants are named by their Amazon storefront nicknames only.

**B.      Relevant Procedural History**

Plaintiff initiated this action on August 11, 2023 against seven defendants, some identified in the case caption using their legal names, and others solely by their Amazon seller names. (ECF No. 1.)

A month later, on September 11, 2023, Plaintiff made a motion for alternative service (ECF No. 14), which the Court granted the following day (ECF No. 19).  Plaintiff alleges that it served Defendants on September 12, 2023 pursuant to the alternative service order. (ECF No. 20.)  The alternative service order permitted service by email on Defendants Leqiong, Monkki, Onecemore, and Chenghai Lucky Boy Toys Co., Ltd. via attorney Michael Feigin, and by email to certain email addresses for Defendants Yucmed, Aomore-US, and Ropwol. (ECF No. 19.)

Soon thereafter, TKD was contacted to assist in this litigation matter by Mr. Feigin, who does not consider litigation within his area of practice. Since undersigned counsel was retained just a few days before the deadline to respond to the Complaint, TKD reached out to counsel for Plaintiff to request an extension of time to respond. (*See* ECF No. 26.) In that initial correspondence, the TKD attorneys inadvertently failed to recognize that there were additional defendants beyond the four Originally Represented Defendants in this action, and therefore mistakenly stated that TKD represented "all" defendants in this action. Plaintiff's counsel consented to the 30-day extension of time to respond to the Complaint; and TKD filed its request with the Court, noting that the reason it required an extension was because its "counsel require[d] additional time to review and investigate the allegations in the Complaint and prepare a response." (ECF No. 26.)  Two of the TKD attorneys also mistakenly entered appearances for all defendants in this action. (ECF Nos. 25 & 27.)

Two weeks after Plaintiff consented to the 30-day extension of time for the defendants to answer the Complaint, Plaintiff submitted its TRO motion to the Court *ex parte* on October 13, 2023.  Plaintiff sought, *inter alia*, an order enjoining sales of the Accused Product (ECF No. 34 ¶ B.2) as well as an injunction of the "continued operation of Defendants' user accounts and storefronts" on Amazon and Walmart in their entireties, and ***all*** of "Defendants' financial or physical assets" in the custody of Amazon, Walmart and Paypal (*id.* at ¶¶ C & B.1.).

Upon receiving notice of that TRO motion on the evening of October 18, 2023, the TKD attorneys quickly responded on the next day, October 19, 2023, which was the deadline, and appeared at the October 20, 2023 TRO hearing.  At the TRO hearing, the Court denied Plaintiff's TRO motion for three reasons:

(1) Plaintiff's unexplained delay of at least two months between the filing of the Complaint on the public docket and making its request for a TRO (as well as the approximately eight month delay between learning of the accused activity and filing suit);

(2) Plaintiff's failure to adequately establish that there is a real risk to the enforceability to a future judgment with respect to these defendants specifically; and

(3) Plaintiff's failure to establish that it is entitled to the broad relief it sought (i.e., "freez[ing] all business conducted by defendants' storefronts on the relevant ecommerce platforms) without any allegations of the "amount sufficient to plaintiff's equitable claim."

(ECF No. 48, Tr. 40:13–42:16.)  The Court permitted some expedited discovery, and directed the parties to meet and confer and submit a joint discovery plan within two business days.  In granting an order defining the scope of expedited discovery, the Court also stayed the defendants' deadline to respond to the Complaint, pending the outcome of Plaintiff's preliminary injunction motion.

(ECF No. 47 ¶ 4.)

Thereafter, while investigating the issues required to be included in expedited discovery, counsel learned that the mistake was made. Accordingly, TKD immediately informed Plaintiff's counsel on November 1, 2023 that TKD did not represent Defendants Aomore-US; Ropwol, and Yucmed. Plaintiff's counsel advised that Plaintiff did not consent at that time to TKD withdrawing as counsel. TKD then promptly filed its Motion to Withdraw with the Court later that same day (ECF No. 50), and the motion was granted (ECF No. 55). The Court authorized Plaintiff to make a motion seeking relief, but directed Plaintiff to "file a motion detailing the requested relief, and the basis for any such request." (ECF No. 53.) The Court also reset the deadlines for Aomore-US; Ropwol, and Yucmed to respond to the Complaint. (ECF No. 57 ¶ 2.)

After TKD's withdrawal motion was granted, Plaintiff's counsel emailed numerous communications to Yucmed. Yucmed thereafter contacted TKD and engaged TKD to represent it in this litigation. (*See* ECF No. 67.) Although TKD requested that Yucmed be put back on the same scheduling track as the Originally Represented Defendants (i.e., stay Yucmed's deadline to respond to the Complaint pending the outcome of Plaintiff's preliminary injunction motion), **Plaintiff refused** to consent. (*See* ECF No. 74-1.) Accordingly, Yucmed filed its motion to dismiss the Complaint on the November 13, 2023 deadline. (ECF No. 68.) Yesterday, in a clear act of gamesmanship, Plaintiff moved the Court to adjourn its deadline to respond to Yucmed's motion until after the preliminary injunction hearing, i.e., the **exact** relief it had refused to consent to with respect to Yucmed. (ECF No. 74.)

## III. PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED

### A.    Legal Standard

"The imposition of sanctions pursuant to a court's inherent authority is truly discretionary." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). Still, "the Supreme Court has

made clear that courts should impose sanctions pursuant to their inherent authority only in rare circumstances." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *see also, e.g.*, *Mazzei v. Money Store*, No. 22-1959, 2023 WL 6784415, at *4 (2d Cir. Oct. 13, 2023) ("Sanctions pursuant to a court's inherent authority are reserved for extreme cases of bad faith or fraud on the court.").

"When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in the actions that led to the lawsuit or conduct of the litigation, which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith." *United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000) (internal quotation and modification omitted). "But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." *Id.*

Any award of legal fees under a court's inherent authority "is limited to the fees the innocent party incurred solely because of the misconduct[.]" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–04 (2017). "This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses[.]" *Id.* at 109; *Virginia Properties, LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 114 (2d Cir. 2017) ("The Court made clear in *Goodyear* that an award of costs and attorney's fees and sanctions must be related *causally*—and not simply *temporally*—to the sanctionable conduct.") (emphasis in original).

### B. Plaintiff Does Not Argue that There Was Any Bad Faith (Because There Was None)

First, sanctions are inappropriate because TKD's mistake was inadvertent, as evidenced by the fact that it was ***immediately*** brought to the Court's attention upon discovery. Plaintiff argues

that the Court may nonetheless impose sanctions because TKD's conduct underlying its mistake "was not for purposes of client advocacy" and thus Plaintiff need not make a showing of bad faith in order for the Court to award sanctions.  (Mot. at 7–9.)  Plaintiff misses the point of the exception for conduct that is not "inherent to client representation."  *Seltzer*, 227 F.3d at 42.  Any actions taken by TKD were part and parcel of representing parties believed in good faith to be clients and, more specifically, in pursuit of those parties' interests.  In all cases, "[a]n order of sanctions must always be made with restraint."  *Palmer v. Simon's Agency, Inc.*, 833 F. App'x 838, 839 (2d Cir. 2020); *see also, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees[.]"); *Seltzer*, 227 F.3d at 39 ("This Court must be careful to ensure that any such decision to sanction a party or attorney is made with restraint and discretion.") (internal quotation and modifications omitted).

Even in the case examples provided by Plaintiff, sanctions were only imposed where the attorneys had already been warned by the Court about their conduct, or otherwise had ample notice that their conduct was disallowed:

- In the *Palmer* case, the Second Circuit found "no abuse of discretion in the district court's imposition of a relatively modest sanction of $500" where "after failing to comply with a local rule for filing a timely response to a motion to dismiss, [the attorney] again violated the Local Rules despite being duly warned that further rules violations could result in sanctions."  *See Palmer*, 833 F. App'x at 840.

- In the *Williams* case, the Second Circuit affirmed contempt sanctions for an attorneys' failure to appear at a court conference that the attorney had known about for three months, but "delay[ed] until the last minute [i.e., the day before] to notify

the district court of [a] scheduling conflict." *Williams v. Lutheran Med. Ctr.*, 776 F. App'x 730, 731 (2d Cir. 2019).  The fine that was imposed was approximately $2,500 to compensate three other law firms for their time when they did appear at the scheduled conference. *See Williams v. Lutheran Medical Center et al.*, No. 1:12-cv-01881-SJ-VVP (E.D.N.Y. Mar. 13, 2017), ECF No. 53.

- In the *Plumeri* case, this Court affirmed a bankruptcy court order awarding sanctions in the amount of $2,500 to compensate a landlord for its counsel's time in drafting a motion to vacate a stay of eviction proceedings. *In re Plumeri*, 434 B.R. 315, 333 (S.D.N.Y. 2010).  The stay had been granted automatically because the tenant's counsel had failed to make the required disclosures of a prior judgment granted to the landlord in a prior eviction proceeding against the tenant, despite counsel's knowledge of such judgment.  *Id.* at 323, 329.

- In the *Bao Guo Zhang* case, this Court found that sanctions were warranted because the Court had previously warned Troy Law that it "no longer represented th[e] Plaintiffs [who had entered into a settlement agreement] and could no longer purport to act on their behalf." *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), Order at 3 (S.D.N.Y. June 11, 2021), ECF No. 229 ("*Bao Guo Zhang* June 11 Order"); *see also Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), Memo Endorsement (S.D.N.Y. June 11, 2021), ECF No. 180 ("admonish[ing Troy Law] again" and directing Troy Law to "submit a letter clarifying" that prior filings were "inaccurate to the extent [that they] state that [Troy Law] represent Bao Guo Zhang").  Despite that clear warning by the Court, Troy Law nonetheless filed objections to the settlement (and then

reconsideration) on the basis that it had standing to do so "as the holder of a charging lien against their former clients." *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), 2021 WL 634717, at *18 (S.D.N.Y. Feb. 16, 2021) The Court found that Troy Law did not "submit any evidence suggesting that these actions were undertaken for the benefit of Troy Law's current clients, and in fact, the delay caused by the firm's objections would only seem to accrue to those plaintiffs' detriment." *Bao Guo Zhang* June 11 Order at 3.

In contrast, the mistake here was inadvertent. When TKD entered appearances for all seven defendants, it did so in good faith, thinking that such appearances and subsequent filings were "undertaken for the client's benefit." *Bao Guo Zhang*, 2021 WL 634717, at *4. As previously, explained (*see* ECF No. 50 at 2), TKD was retained just a few days before the deadline for the defendants to respond to the Complaint. In its rush to correspond with counsel for Plaintiff to request an extension of time to respond (so that it could have "additional time to review and investigate the allegations in the Complaint," ECF No. 26), TKD inadvertently failed to recognize that there were additional defendants beyond the four Originally-Represented Defendants in this action, and therefore mistakenly stated that TKD represented "all" defendants in this action. (*Id.*)

We proceeded under that misunderstanding until its discovery about a month later. The mistake was exacerbated by the need to respond—on about 24 hours' notice under threat of their clients' entire businesses being shuttered—to Plaintiff's *ex parte* TRO motion. (*Id.*) Given the extremely tight timeframes for responding to the TRO—which threatened to shutter their clients' entire businesses—TKD appeared at the TRO hearing, submitted a joint discovery plan, and issued third-party discovery (if it was to be of any use for the preliminary injunction briefing). As a result, TKD acted in good faith and the best interest of their clients.

10

Plaintiff's Motion falsely states that TKD "has not disclosed" the circumstances by which it discovered its mistake.  (ECF No. 61 at 5.)  However, TKD's motion clearly explained that TKD discovered the mistake at the time one would have expected, i.e., while investigating the issues required to be included in expedited discovery, which asked for specific information concerning each defendant.  Upon discovery, TKD immediately raised the issue with Plaintiff's counsel on November 1, 2023—in a call that had been scheduled for purposes of negotiating a proposed confidentiality order due that same day—and explained the situation.  Later that day, Plaintiff's counsel advised that they did not consent to TKD's withdrawal "on the basis of the facts we currently know," but stated that they "may decide not to oppose the motion after [they] see the facts [TKD] file[s]."  But, tellingly, Plaintiff did not request any further facts, and did not make any proposals as to any further administrative actions that might need to be taken in view of the withdrawal.

TKD's minor mistake, which was immediately corrected upon discovery, does not rise to the level of sanctionable conduct.  This is not a situation where counsel was previously put on notice of noncompliance with the rules (*Palmer*); where counsel delayed for months and without explanation in seeking an extension of a known appearance date (*Williams*); where a plaintiff failed to make required disclosures when filing suit (*Plumeri*); or where counsel attempted to interfere with the proceedings of a former client, for counsel's personal benefit in attempting to collect fees (*Bao Guo Zhang*).  It is also not analogous to a situation where counsel failure to return to court on time after the Court had expressly advised counsel that a ten-minute delay was not acceptable, and the delay kept 25 people waiting.  *See Seltzer*, 227 F.3d at 40–43 (explaining that $350 sanctions "may be justified absent a finding of bad faith" in such circumstances, but remanding to district court because, *inter alia*, counsel had not had an adequate chance to respond).  Rather, this

11

is a situation of an inadvertent mistake, which has happened to many other law firms in other cases. *See, e.g.*, *Harvey v. Russell*, No. 7:18-cv-00097-EKD-JCH, Order at 6 (W.D. Va. Sept. 5, 2019) (granting "administrative-type" motion to withdraw for counsel who inadvertently entered appearance on behalf of two defendants, and waived service on their behalf months before withdrawing); *Melgar v. Pie Chatach 1776 LLC*, No. 1:23-cv-00917-OEM-JRC, Minute Entry (E.D.N.Y. Aug. 15, 2023) (directing counsel to advise the Court as to next steps in view of revelation that counsel does not represent defendant "even though counsel filed an answer to the amended complaint on behalf of" that defendant); *Doncouse v. S.J.T. Prince LLC et al.*, No. 1:22-cv-00592-PGG-OTW, Memo Endorsement (S.D.N.Y. Sept. 12, 2022) (granting motion to withdraw filed about two months after counsel inadvertently filed notice of appearance and corporate disclosure statement for defendant he did not represent). TKD is unaware of any situation where such an inadvertent mistake resulted in sanctions (under the Court's inherent power or otherwise), and the Court should decline to award sanctions here.

### C.     Plaintiff Has Not Demonstrated Any Fees Incurred as a Result of the Mistake

In all events, Plaintiff has not met its burden to show that it was harmed "solely because of" the mistake, and thus its request for sanctions should be denied. *Goodyear Tire & Rubber Co.*, 581 U.S. at 103–04. Because Plaintiff has not even bothered to detail the relief it seeks—instead asking the Court to "set a schedule pursuant to which Spin Master can submit a calculation of the excess fees it has incurred" (Mot. at 9)—TKD is left in the dark as to what "excess fees" Plaintiff vaguely alleges that it has incurred as a result of the mistake.

As best understood, Plaintiff argues that it has been harmed because: (1) Plaintiff incurred fees drafting the present motion, which essentially requests reconsideration of the Court's Order denying Plaintiff's request for attachment as to Defendants Aomore-US and Ropwol (*see* Mot. at 1, 9); and (2) "Spin Master would have already obtained a default judgment against the

Unrepresented Defendants had TKD not made its false representations" (*id.*). Both of these arguments attempt to rewrite history, and neither warrants an award of fees.

### 1.     Plaintiff Has Not Shown (and Cannot Show) that Its Attachment Motion Would Have Been Granted "But For" TKD's Mistake

First, Plaintiff's argument that TKD's mistake "forestalled attachment for" the unrepresented defendants is not accurate. (Mot. at 1.) As the Court is aware, Plaintiff's attachment request was denied for multiple reasons: (1) Plaintiff's more than two-month delay and public filing of the Complaint weighed against any arguments of urgency or irreparable harm; (2) Plaintiff failed to establish a real risk to the enforceability to a future judgment with respect to these defendants specifically (as compared to any foreign defendant); and (3) Plaintiff failed to establish that it is entitled to the broad relief it sought. (ECF No. 48, Tr. 40:13–42:16; *see also* ECF No. 32 at 3.) The Court's reasoning that all defendants had appeared in the case was just one aspect considered in making its determination in reason (2). Plaintiff has not shown, and cannot show, that the Court would have granted its attachment request "but for" TKD's mistake. *See Goodyear Tire & Rubber Co.*, 581 U.S. at 109.

Because Plaintiff argues that TKD should be sanctioned due to the outcome of Plaintiff's attachment motion (*see* Mot. at 9), TKD also responds briefly on the merits. TKD reiterates the arguments made in the October 19, 2023 Opposition brief to Plaintiff's TRO motion, including the explanation that Plaintiff's request for a TRO was unwarranted because Plaintiff's more than two month delay in making the motion undermined any argument that Plaintiff would be irreparably harmed without such emergency relief. (*See* ECF No. 44 at 5–7.) TKD also reiterates that this Court has previously denied requests to freeze assets of Chinese defendants based solely on the basis that they are foreigners, even when those defendants did not appear in the case, because such vague allegation is insufficient to justify an attachment. (*See id.* at 8–9 (citing *Jiangsu Huari*

*Webbing Leather Co.* case).)   TKD further reiterates that Plaintiff's requested attachment is overbroad, and seeks to shutter entire e-commerce accounts rather than attach funds tied to the monetary relief sought by Plaintiff in this action.  (*See id.* at 21.)  Plaintiff's beseechment that the overbroad attachment only be imposed on a temporary basis is neither supported by law, nor how such an asset freeze would be applied by Amazon in practice.  (*See, e.g.*, ECF No. 45-4, *Jiangsu Huari Webbing Leather Co.* Tr. 46:13–48:7 (counsel explaining that, even though the Court tried to limit its attachment order to apply only to the alleged infringing products, their clients' entire Amazon accounts were frozen, as was consistent with their experience in how Amazon treats such orders to avoid any potential liability).)

Still further, TKD reiterates that Plaintiff has not demonstrated a likelihood of success on the merits, and thus is not entitled to any TRO or preliminary injunction.  (*See* ECF No. 44 at 9–18.)  For example, Plaintiff's continued pursuit of attachment of assets is mystifying given that, here, a patent law expert retained by Amazon ***at Plaintiff's behest*** determined that there was no conceivable infringement.  The balance of the hardships and Plaintiff's bad faith also weigh against such relief. (*See id.* at 18–20.)

And, importantly, TKD reiterates that "[a] 'court may not enter a preliminary injunction simply to safeguard [a defendant's] assets in the event that [defendant is] ultimately held liable on these claims.'" (*Id.* at 20–21 (quoting *Spin Master v. Aciper*, No. 19-CV-6949 (VSB), 2020 WL 6482878, at *3 (S.D.N.Y. Nov. 4, 2020).)  Plaintiff's new argument that it has not just requested money damages but has also "requested equitable relief that requires the 'sequestration of the Accused Products' and the 'destruction' of 'Defendants' stock of infringing products'" (Mot. at 7) misses the mark.  No one is disputing that Plaintiff is seeking the "equitable" remedy of an injunction under which the defendants would be restrained from selling the Accused Product;

14

rather the only compensatory remedy that Plaintiff is seeking relates to "legal" not "equitable" monetary damages, for which the Court does not have the authority to issue an asset freeze. (*See* ECF No. 44 at 20 (citing, *inter alia*, *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund. Inc.*, 527 U.S. 308, 333 (1999)).)  Indeed, Plaintiff has not even made a showing that it is entitled to pre-suit monetary damages in the first place.  (*See* ECF No. 69 at 19–22 (explaining that the Complaint does not plead compliance with the Patent Marking Statute).)

### 2.    Plaintiff Has Not Shown (and Cannot Show) That It Is Entitled to a Default Judgment, Nor that a One Month Delay Is a Basis for Fees

Plaintiff's argument that it "would have already obtained a default judgment" if not for TKD's mistake (*see* Mot. at 9) is also unsupported and presumes factual findings and legal determinations that the Court has not yet made.  Here, there are countless procedural and substantive defects that prevent Plaintiff from obtaining a default judgment.  For example:

1) Plaintiff has not properly served any of the defendants.  *See, e.g.*, *Negrito v. Buonaugurio*, 836 F. App'x 36, 38 (2d Cir. 2020) (finding that a default judgment would have been improper when service was improper).  As explained in Yucmed's pending motion to dismiss and motion to vacate the Court's order granting alternative service, "service by email on individuals or entities located in China is ***not permitted*** under the [Hague] Convention . . . or the Federal Rules of Civil Procedure." (ECF No. 69 at 3, 6–10 (quoting *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1391 (S.D.N.Y. 2022) (emphasis added)).)

2) Plaintiff has not shown that it has complied or will comply with any of the other service requirements necessary under the Hague Convention for obtaining a default judgment against a Chinese defendant.  *See, e.g.*, *Smart Study*, 620 F. Supp. 3d at 1399–1401 ("Even if the Court had determined that service by email was permissible under the

Hague Convention, it would still not be permitted to enter default judgment" because, *inter alia*, the plaintiff had not "establish[ed] that it made any reasonable efforts to obtain a certificate of service through authorities in China"); *Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 567 (S.D.N.Y. 2013) ("Article 15 [of the Hague Convention] allows for entry of a default judgment, but only if three conditions are fulfilled: (1) 'the document was transmitted by one of the methods provided for in this Convention'; (2) 'a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document'; and (3) 'no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.'").

3) Plaintiff has not established that the Court has personal jurisdiction over any of the defendants. *See, e.g.*, *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."). As explained in Yucmed's pending motion, the Complaint fails to provide any factual allegations concerning Defendant's contacts with New York. (*See* ECF No. 69 at 12–13.)

4) The merits of this case are contested. "Before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendants' liability as a matter of law." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). "A default only establishes a defendant's liability if [the all well-pleaded factual allegations contained in the complaint] are sufficient to state a cause of action against the defendants." *Id.* Here, the Complaint fails to state a claim for patent infringement. (*See* ECF No. 69 at 13–19.) Moreover, courts "have a strong

preference for resolving disputes on the merits." *Gesualdi*, 629 F. App'x at 113.  Since the merits of the case are vigorously contested by the defendants who have appeared, it would not make sense for the Court to make any determinations on a motion for default judgment while the merits of the dispute are yet to be decided.  At the very least, any decision on a motion for default judgment should be stayed until after a determination on Plaintiff's motion for a preliminary injunction.

In all events, even assuming Plaintiff could somehow prove that it would have obtained a default judgment a month sooner if the deadline for Aomore-US and Ropwol to respond to the Complaint had not been extended, Plaintiff still does not explain how that one-month delay has harmed Plaintiff or what fees it is seeking on that basis.

Because Plaintiff cannot establish the "but-for" causation required for a finding of monetary sanctions, Plaintiff's Motion should be denied. *Goodyear Tire & Rubber Co.*, 581 U.S. at 109.

## IV.   CONCLUSION

For the above reasons, Plaintiff's Motion should be denied.

Respectfully submitted,

Dated: November 22, 2023                    By: *s/ Sandra A. Hudak*
Tuvia Rotberg
Mark Berkowitz
Sandra A. Hudak
Eliezer Lekht
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
E-mail: trotberg@tarterkrinsky.com
          mberkowitz@tarterkrinsky.com
          shudak@tarterkrinsky.com
          elekht@tarterkrinsky.com

*Attorneys for Defendants Leqiong,*
*Monkki, Onecemore, Yucmed Store, and*
*Chenghai Lucky Boy Toys Co., Ltd.*