UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------- X

SPIN MASTER, LTD.

                      Plaintiff,

  - against -

AOMORE-US; LEQIONG a/k/a
XIAOGAN LEQIONGSHANGMAOYOUXIANGONGSI;
MONKKI a/k/a ZHONGXIANGSHI
HENGHAOMAOYIYOUXIANGONGSI,
ONECEMORE a/k/a
SHENZHEN JINFANCHUANMEIYOUXIANGONGSI,
ROPWOL, YUCMED STORE,
and CHENGHAI LUCKY BOY TOYS CO., LTD.,

                      Defendants.

Case No. 23 Civ. 7099-DEH

Hon. Dale E. Ho

-------------------------------------------------------------------------------- X

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S
RENEWED MOTION FOR ATTACHMENT AND MOTION FOR SANCTIONS**

Kevin N. Ainsworth
Kara M. Cormier
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
919 Third Ave.
New York, NY 10022
Tel:  (212) 935-3000
Fax: (212) 983-3115
kainsworth@mintz.com
kmcormier@mintz.com

Andrew D. Skale (*pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Rd., Ste 300
San Diego, California 92130
Tel:  (858) 314-1500
Fax: 858-314-1501
adskale@mintz.com

*Attorneys for Plaintiff*

Plaintiff Spin Master, Ltd. ("Spin Master") submits this memorandum in further support of its motion for sanctions against Tarter Krinsky & Drogin LLP ("TKD") and its renewed motion for attachment as against Aomore-US and Ropwol.

## INTRODUCTION

TKD repeatedly and falsely claimed to the Court and to Plaintiff's counsel that it represented three defendants with whom it had never communicated. This was grossly negligent. To avoid liability, TKD argues it should be insulated from sanctions for the fees and prejudice it caused Spin Master because its conduct was purportedly not intentional or in bad faith. That is not the law, nor should it be. *Palmer v. Simon's Agency, Inc.*, 833 F. App'x 838, 839 (2d Cir. 2020) (authorizing sanctions where lawyers negligently or recklessly fail to perform their responsibilities as officers of the court).

While TKD argues that its actions were just a "mistake," it does not explain how this so-called "mistake" was not reckless, given all the circumstances that should have prevented it from happening, including:

1) There are seven defendants named on the face of the Complaint, TKD ultimately only represented four, begging the question as to how TKD could simply assume it represented the other three;

2) Prior counsel was very clear that he did not represent Aomore-US, Ropwol, or Yucmed;

3) The Order on the motion for alternative service required separate email service on Aomore-US, Ropwol, and Yucmed;

4) Plaintiff's counsel explicitly asked TKD which defendants they represented, and TKD said "all";

5) TKD filed Rule 7.1 Statements on behalf of the Unrepresented Defendants, and somehow did so without ever communicating with them;

6) TKD filed evidence on behalf of the Unrepresented Defendants, and somehow did so without ever communicating with them;

7)     TKD falsely represented to the Court that it could provide the physical address for the Unrepresented Defendants, notwithstanding that it had never communicated with them;

8)     When the Court asked TKD if the Unrepresented Defendants would pay a judgment, TKD noted that the Unrepresented Defendants have all "appeared" in the case;

9)     TKD issued subpoenas on behalf of Aomore-US without ever communicating with it;

10)     TKD was obligated by 22 NYCRR 1215.1 to obtain a signed engagement letter from each client;

11)     TKD was obligated by the Federal Rules to sign its submissions only after a reasonable inquiry; and

12)     The Rules of Professional conduct contain multiple rules that should have triggered communication with the Unrepresented Defendants prior to a claim of representation (*e.g.* Rules 1.1, 1.3, 1.4, 1.16, and 1.18).

All TKD says in the face of these valid questions, is that it was in a hurry and assumed it represented all defendants. Thus, TKD argues (at 10) that its "mistake" should be ignored. But the Court should not excuse TKD from this gross negligence because it has prejudiced Spin Master, caused excess fees, and influenced both the Court's and Spin Master's decisions to Spin Master's detriment. While TKD attempts to stress its good faith, it has not set forth any facts amounting to good faith. TKD's "assumption" that it represented all defendants was premised on nothing. No diligence. No communication. No review of the docket (which had only 34 entries the day before TKD appeared). If TKD needed more time, it should have asked for more time. It did not.

The above facts make it clear that TKD was grossly negligent. TKD also does not deny that this Court has the power to issue sanctions for such conduct. TKD simply harps on the lack of factually identical cases. But any lack of finding identical case law actually serves to emphasize how grossly negligent TKD's conduct was. Attorneys do not appear in court advocating on behalf

of entities they do not represent and do not file disclosures (*e.g.* Dkt. No. 31) on behalf of entities with which they have never even communicated. Indeed, FRCP Rule 7.1 necessitates such communications, so that judges can make informed decisions as to any conflicts of interest.

TKD also argues that sanctions should be denied because Spin Master has not yet set forth the amount of fees TKD has inflicted upon Spin Master. But as noted and is appropriate, the amount of fees can be determined after deciding this motion. *See*, *e.g.*, *Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), 2021 U.S. Dist. LEXIS 29373, at *55-56 (S.D.N.Y. Feb. 16, 2021) (allowing movant "to submit . . . sworn affidavits verifying time records and attorneys' costs associated with defending against" opposing counsel's prior conduct). That makes sense here given that Spin Master cannot know the total amount of excess fees TKD's gross negligence caused until after the resolution of this motion.

In short, TKD acted with recklessness and/or gross negligence and the Court has the power to award Spin Master the fees that such conduct caused. As such, Spin Master respectfully requests that the Court exercise that power to award Spin Master fees in an amount to be determined following a ruling on this motion.

Finally, TKD makes several arguments in opposition to Spin Master's renewed motion for attachment against Aomore-US and Ropwol. The Court should disregard these arguments because TKD does **not** represent them and thus has no standing as to that portion of Spin Master's motion.[1] The fact that TKD continues to make such arguments on behalf of unrepresented entities further supports Spin Master's request for sanctions. In any event, none of TKD's arguments warrant denial of Spin Master's renewed motion for attachment. Thus, that motion should also be granted.

---

[1] Spin Master has withdrawn its renewed motion for attachment as to Yucmed.

**ARGUMENT**

**I.      Spin Master Should Be Awarded Sanctions**

TKD's only argument (at 7-12) is that it should not be sanctioned because its actions were a "mistake" and not bad faith. But as Spin Master explained, bad faith is not required here.  The Court may exercise its inherent power to sanction counsel "'**without a finding of bad faith**' where a lawyer negligently or recklessly fails to perform his responsibility as an officer of the court." *Palmer v. Simon's Agency, Inc.*, 833 F. App'x 838, 839 (2d Cir. 2020) (emphasis added). "This exception to the bad faith requirement includes … [any] conduct which interferes with the court's power to manage its calendar." *Id.*  TKD attempts (at 8-9) to distinguish *Palmer* and the other cases Spin Master cited on the basis that the attorneys there "had already been warned by the Court about their conduct, or otherwise had ample notice that their conduct was disallowed." But TKD cannot deny that it had notice that it ought not to claim to represent clients with whom it had never communicated. Such notice is provided by the Rules of Professional Conduct, Federal Rules of Civil Procedure 7.1 and 11, 22 NYCRR 1215.1, and other rules.

TKD also argues (at 8) that its conduct was "for purposes of client advocacy" – and thus, that bad faith is required – because it was "part and parcel of representing parties believed in good faith to be clients." But TKD's actions were "not inherent to client representation," and so there is no bad faith requirement. *Williams v. Lutheran Med. Ctr.*, 776 F. App'x 730, 731 (2d Cir. 2019); *see also* Dkt. No. 77 (citing *United States v. Seltzer,* 227 F.3d 36, 41–42 (2d Cir. 2000).  Further, there are other exceptions to bad faith, including where a lawyer fails to perform his or her responsibility as an officer of the court. *Palmer*, 833 F. App'x at 839.  That also applies here. Regardless, TKD's purported "good faith" belief was informed by nothing other than gross negligence.

4

Further, the distinction that TKD attempts to make of *Bao Guo Zhang* (at 9-10) proves the point. In that case, a law firm repeatedly purported to represent parties it did not represent and on whose behalf it had no standing to advocate. The court ***sanctioned*** the firm for that conduct and in doing so specifically noted the rule that sanctions were authorized even without a finding of bad faith if conduct is "not undertaken for the client's benefit." *Bao Guo Zhang v. Shun Lee Palace Restaurant, Inc.*, 2021 WL 2414872, at *1-2 (S.D.N.Y., June 11, 2021).

TKD continues throughout its opposition to paint its gross negligence as an "inadvertent mistake." It then cites three dockets from across the country where the courts granted ***unopposed*** motions to withdraw, where no motions for sanctions were ever filed, and no prejudice to the other party was alleged or shown. Those dockets are not informative here. *Harvey* involved a *pro se*, incarcerated plaintiff who did not oppose defense counsel's motion to withdraw and never sought sanctions. *Melgar* and *Doncouse* likewise involved unopposed motions to withdraw and no motions for sanctions. Here, Spin Master sought sanctions because TKD's gross negligence prejudiced it. *See* Dkt. No. 61 at 8. This conduct falls squarely within the Court's inherent powers to sanction, as the cases Spin Master cited in its moving papers (at 7-9) show.

As Spin Master explained, it is prejudiced because TKD took positions on behalf of entities it did not represent and made arguments that it had no standing to make, which infected the Court's rulings and Spin Master's positions in this case. Nevertheless and quite shockingly, TKD utilizes its opposition (at 13-17) to argue the merits of:

(1) Spin Master's renewed motion for attachment **against Aomore-US and Ropwol**, and

(2) a motion for default judgment against Aomore-US and Ropwol, which Spin Master has

5

not even filed yet.[2]

TKD has no standing to oppose either of those motions, one of which is not even on file. The present motion seeks to hold TKD accountable for making arguments on behalf of entities that it does not represent; yet, TKD continues to do that to this day. TKD's backdoor attempt to oppose these motions on behalf of parties it "mistakenly" claimed to have represented, raises further questions about its purported lack of bad faith. Cleary, TKD believes there is an advantage to it representing Aomore-US and Ropwol in this case. Sanctions should be issued here to make it clear that TKD cannot make arguments on behalf of non-clients Aomore-US and Ropwol.

Finally, contrary to TKD's argument (at 15-17), while Spin Master was prejudiced by the delay in obtaining default judgment against Aomore-US and Ropwol, it is not seeking fees for that delay. It is only seeking the excess fees that it has and will continue to incur as a result of having to make a ***renewed*** motion for attachment and sanctions (as the original attachment motion concerning Aomore-US and Ropwol would have been argued differently by Plaintiff and/or decided differently by the Court, but for TKD's "mistake").  Regardless of whether the Court grants the renewed motion, Spin Master is entitled to its fees and it should be permitted to submit the amount of those fees for the Court to determine.  If the renewed motion is granted, then clearly there is but-for causation stemming from TKD's misrepresentation.  But even if the renewed motion is denied, Spin Master would still have had to have filed this renewed motion because the Court based its original opinion concerning Aomore-US and Ropwol on the wrong set of facts predicated upon TKD's misrepresentations.  Thus, contrary to TKD's argument, there is no question as to but-for causation of these excess fees. The ***only*** reason for this renewed motion is

---

[2] Spin Master rejects the arguments TKD makes in opposition to its yet-to-be filed motion for default judgment. Spin Master will set forth everything it needs to set forth when it files that motion and TKD has no standing to oppose that motion once it is filed.

6

TKD's false representations to the Court.

For all these reasons, Spin Master requests an order awarding it sanctions in the form of the excess fees that Spin Master has expended on its renewed motion for attachment and sanctions. If the Court grants this request, Spin Master can then calculate the amounts it would be due and submit them to the Court.

## II.  Spin Master Is Entitled to Attachment Against Aomore-US and Ropwol

TKD's arguments on the merits of the renewed motion for attachment (at 13-15 of its opposition) must be disregarded because it does not represent Aomore-US or Ropwol and thus has no standing to make such arguments. *See, e.g.*, *Phx. Light SF Ltd. v. United States Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 276 n.17 (S.D.N.Y. 2020) (refusing to consider arguments that defendants had no standing to make); *Bao Guo Zhang*, 2021 WL 2414872, at \*1-2 (sanctioning counsel for repeatedly making arguments without standing for parties it did not represent).

But even if the Court were to consider TKD's merit-based arguments – made on behalf of entities that they do not represent – none warrant denial of the attachment motion.  First, TKD argues that a TRO should not be granted because there is no irreparable harm in light of Spin Master's purported delay. While Spin Master disagrees, the argument is irrelevant because **this is not a motion for a TRO**. This is a motion for an attachment and there is no irreparable harm requirement. *See* Dkt. No. 35 at 27-28 (setting forth requirements for attachment). As Spin Master discussed in its supplemental briefing on its first motion, there is also no requirement that a party file an attachment motion at the outset of the case. *See* Dkt. No. 41 at 4-5; *TAGC Mgmt., LLC v. Lehman,* 842 F. Supp. 2d 575, 586–87 (S.D.N.Y. 2012) (complaint filed September 2010; attachment ordered January 2012).

Second, TKD argues (at 14) that the renewed motion for attachment is overbroad because

7

"it seeks to shutter entire e-commerce accounts." TKD apparently did not read Spin Master's brief. As set forth in Spin Master's moving papers, it does not request a freeze on the storefronts; it requests an attachment on Aomore-US's and Ropwol's assets at Amazon, Walmart, or PayPal. That attachment can be adjusted to be equivalent to Aomore-US's and Ropwol's sales of infringing products once Amazon produces that sales data. TKD's only retort to this narrow request – again, made on behalf of entities that TKD does not represent – is that Amazon might not follow this Court's orders. Such speculation has no foundation in fact and the case that TKD cites relates to the freezing of storefronts, not attachment of assets.

Third, TKD argues that Spin Master has not shown a likelihood of success on the merits.[3] As discussed at length in Spin Master's original motion papers (Dkt. Nos. 34-38, 41), it has made such a showing. TKD's claim that a "patent law expert retained by Amazon at Plaintiff's behest" found no infringement, is belied by the facts. Spin Master sought to police its rights through Amazon's brand protection system before running to court for relief. Dkt. No. 38 at ¶ 2. Spin Master had no hand in selecting the individual who conducted the informal review of the accused products, nor has this person been named an expert in this case, and thus any "opinion" by this lay person is irrelevant. That person determined ***in approximately half a page*** that the accused products did not infringe, disregarding the detailed, 54-page opinion that the Honorable Judge Cote issued following the submission of evidence and a full hearing. *Id.* at ¶ 3; *Spin Master, Ltd. v. E. Mishan & Sons, Inc.,* No. 19-cv-9035 (DLC), 2019 WL 6681563 (S.D.N.Y. Dec. 6, 2019) (granting Spin Master a preliminary injunction against similarly infringing products on the basis

---

[3] TKD also purports to make invalidity arguments on behalf of Aomore-US and Ropwol (Opp. at 2-3). Again, TKD has no standing to make such arguments, but more importantly, Judge Cote performed a detailed review of the validity of Claim 1 of the '897 Patent and found it valid – a point that TKD fails to note. *Spin Master, Ltd. v. E. Mishan & Sons, Inc.,* No. 19-cv-9035 (DLC), 2019 WL 6681563 (S.D.N.Y. Dec. 6, 2019).

of the '897 patent). Regardless, the conclusion that this person reached is not evidence in this case.

Fourth, TKD argues (at 14) that a court cannot preliminarily enjoin assets simply to safeguard a judgment. But Spin Master does not seek a preliminary injunction; it has moved for attachment under FRCP Rule 64 and New York CPLR 6201, 6210, and 6212. As the case TKD cites made clear, the Supreme Court left untouched courts' authority to attach assets under FRCP Rule 64. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330-31 (1999). In fact, the Supreme Court held as it did to avoid "render[ing] Federal Rule of Civil Procedure 64, which authorizes use of state prejudgment remedies, a virtual irrelevance." *Id.* Thus, when, as here, "a plaintiff fears that a defendant's actions might frustrate an anticipated money judgment, its remedies lie in the state prejudgment remedies available through Federal Rule of Civil Procedure 64." *JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.*, 295 F. Supp. 2d 366, 390 (S.D.N.Y. 2003). Spin Master sought relief under these rules and TKD's argument addressed to FRCP Rule 65 is a red herring.

Finally, TKD argues (at 15) – again, on behalf of entities it does not represent – that Spin Master has not made a showing that it is entitled to pre-suit damages because it has not shown compliance with the marking statute. However, the Complaint alleges that Aomore-US and Ropwol had both actual and constructive notice of the Spin Master Patents. Dkt. No. 1 ¶ 34 ("prior to the filing of the Complaint, Defendants had actual and/or constructive notice of the Spin Master Patents"); *id.* at ¶¶ 47–49 ("Defendants had actual knowledge of the '897 patent. Defendants have continued to offer infringing products after receiving notice of Spin Master's rights. The Defendants knew of the '897 Patent, and their infringement of the ''897 Patent was knowing and willful.") (emphasis added); *see also id.* ¶¶ 57–59, 67–69, 77–79, 87–89 (alleging similar facts regarding Spin Master's other patents). That is the purpose of marking. Moreover, as TKD knows

from the declaration provided by Spin Master in connection with this Court's October 27, 2023 order (Dkt. No. 47), the relevant Spin Master products have always been marked.

Thus, all of TKD's improper merits-based arguments are unmeritorious, and in any event should be rejected, since TKD lacks standing to make them. As such, Spin Master's renewed motion for attachment as against Aomore-US and Ropwol should be granted.

## CONCLUSION

For the foregoing reasons, the Court should grant Spin Master's request for sanctions against TKD to compensate Spin Master for the fees TKD's gross negligence has caused. In addition, the Court should grant Spin Master's renewed request for attachment as against Aomore-US and Ropwol.

DATED:  November 29, 2023

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.

*/s/ Andrew D. Skale*
Kevin N. Ainsworth
Kara M. Cormier
919 Third Ave.
New York, NY 10022
Tel:     (212) 935-3000
kainsworth@mintz.com
kmcormier@mintz.com

Andrew D. Skale (*Pro Hac Vice*)
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel:     (858) 314-1500
adskale@mintz.com
*Attorneys for Plaintiff* SPIN MASTER, LTD.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2023, my office served a true and correct copy of the foregoing document on all counsel of record via ECF.

Dated: November 29, 2023

                                             */s/ Andrew D. Skale*
                                             Andrew D. Skale

511452043v.7

511452043v.7