UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SPIN MASTER, LTD.,

                              Plaintiff,

              v.

AOMORE-US, et al.,

                              Defendants.

---

23 Civ. 7099 (DEH)

**OPINION**
**AND ORDER**

---

DALE E. HO, United States District Judge:

Before the Court in this patent infringement suit are Plaintiff's motion for a preliminary injunction, *see* ECF No. 32 (describing Plaintiff's *ex parte* application); Plaintiff's motion for attachment and sanctions, *see* ECF No. 60; Defendant Yucmed Store's and Defendants Leqiong, Monkki, Onecemore, and Chenghai Lucky Boy Toys Co.'s motions to dismiss and to vacate the Court's Order granting alternative service, *see* ECF Nos. 68, 81; Plaintiff's motion to amend its pleadings, *see* ECF No. 93 (opposing Defendants' motions to dismiss and in the alternative requesting leave to file an amended complaint); and Plaintiff's motion for default judgment as to Defendants Aomore-US and Ropwol, *see* ECF No. 84.

For the reasons discussed herein, Plaintiff's motion for a preliminary injunction is **DENIED**, without prejudice to renewal; Plaintiff's motion for attachment and sanctions is **GRANTED IN PART AND DENIED IN PART**, without prejudice to renewal; Defendants' motions to dismiss and to vacate the Court's Order granting alternative service are **GRANTED IN PART AND DENIED IN PART**; Plaintiff's motion to amend its pleadings is **GRANTED**; and Plaintiff's motion for default judgment is **DENIED**, without prejudice to renewal.

## BACKGROUND

### I.      Factual Background

Plaintiff Spin Master is a corporation headquartered in Ontario, Canada, that owns patents for wall-climbing toys that are at the center of this litigation. *See* Compl. ¶¶ 1-2, ECF No. 1. Defendants Leqiong, Monkki, Onecemore, Chenghai Lucky Boy Toys Co., Ltd. ("Chenghai"), and Yucmed Store (collectively, the "Represented Defendants") and Defendants Aomore-US and Ropwol (together, the "Unrepresented Defendants") are China-based companies that manufacture and/or sell toys ("Accused Products") online in the United States. *See id.* ¶¶ 3-10. Plaintiff brings a patent infringement suit arising out of Defendants' use, offering for sale, and/or sales in the United States, and/or importation into the United States of wall-climbing toy vehicles that allegedly infringe Spin Master's U.S. patent Nos. 9,675,897; 7,980,916; 7,753,755; 8,979,609; and 10,398,995. *Id.* ¶ 1. Plaintiff alleges that it is being irreparably harmed by Defendants' conduct, as the Accused Products undercut its market for its wall-climbing vehicles, jeopardize its patent rights, and prevent it from selling its products at prices it would otherwise charge. *See* Cook Decl. ¶¶ 16-21, ECF No. 36.

### II.      Procedural Background

#### A.  Service

Plaintiff filed suit on August 11, 2023. *See* Compl. On August 17, 2023, Plaintiff asked Michael J. Feigin ("Feigin"), a U.S.-based attorney who had been communicating with Plaintiff on behalf of Chenghai, whether he would accept service of the Complaint on behalf of all Defendants. *See* Sept. 15, 2023, Letter 2, ECF No. 24 (indicating that Feigin is located in New York and/or New Jersey); Skale Decl. Ex. A at 6, ECF No. 62-1 (asking Feigin to accept service for Defendants). Feigin stated that he was not authorized to accept service on Defendants' behalf. Skale Decl. Ex. A at 5. Plaintiff sought clarity regarding which Defendants Feigin

Case 1:23-cv-07099-DEH   Document 126   Filed 06/17/24   Page 3 of 36

represented, and on August 29, 2023, Feigin confirmed that he represented only Chenghai, Leqiong, Monkki, and Onecemore. *Id.* at 2. He expressly stated that he did not represent Yucmed Store, Aomore-US, and Ropwol. *Id.*

On September 11, 2023, Plaintiff filed a motion for alternative service of process under Rule 4(f)(3). *See* Mot. for Alt. Service, ECF No. 14; Mem. of L. in Supp. of Mot. for Alt. Service ("Alt. Service Br."), ECF No. 15. Plaintiff argued that "Rule 4(f)(3)'s only limitation— that the court-ordered method of service is not prohibited by international agreement—[was] not an impediment here[,]" as (1) courts in the Second Circuit have "authorize[d] both service by email on a foreign defendant and service by email on a foreign defendant's United States counsel," Alt. Service Br. at 7-8, and (2) the only relevant international agreement, the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention" or "Convention"), 20 U.S.T. 361, did not apply here, where Defendants' addresses were "not known." Alt. Service Br. at 9. In support of its assertion that the addresses were "not known," Plaintiff explained that it had retained the services of Viking Advocates, LLC ("Viking"), a third-party consulting law firm, which had advised Plaintiff that none of Defendants' Amazon addresses "appeared to be accurate or complete," and that costly service through the Central Authority (a channel required by the Hague Convention) would "almost certainly" prove unsuccessful. *See id.* at 2.

The following day, on September 12, 2023, the Court granted Plaintiff's motion for alternative service (the "Alternative Service Order"), which allowed: (1) service on Represented Defendants, excluding Yucmed Store, through Feigin, and (2) service on Yucmed Store and Unrepresented Defendants via email addresses listed on Amazon.com ("Amazon"). *See* Order Granting Pl.'s Mot. for Alt. Service ("Alt. Service Order"), ECF No. 19. Pursuant to that Order, Plaintiff filed a certificate of service on all Defendants the same day. *See* Certificate of Service,

ECF No. 20.  Feigin requested that the Court vacate the Alternative Service Order, stating that he had not entered an appearance in this case, could not find any service of the motion on him, and did not accept service on behalf of any of the Defendants.  Sept. 15, 2023, Letter, ECF No. 24. The Court denied Feigin's request without prejudice to renewal.  *See* Sept. 29, 2023, Order, ECF No. 29.

### B.  Show Cause Hearing

On September 29, 2023, attorneys of the law firm Tarter Krinsky & Drogin LLP ("TKD") appeared, purportedly on behalf of all Defendants.  *See* Lekht Notice of Appearance, ECF No. 25; Berkowitz Notice of Appearance, ECF No. 27.  On October 12, 2023, this case was reassigned to the undersigned.

On October 13, 2023, by grant of this Court, Plaintiff filed an *ex parte* motion for, *inter alia*, (1) a temporary restraining order ("TRO") freezing Defendants' merchant storefronts on Amazon and Walmart.com ("Walmart") and freezing Defendants' financial and physical assets at Amazon, Walmart, and PayPal Inc.; (2) expedited discovery; and (3) an order to show cause why a preliminary injunction and attachment pursuant to Rules 64 and 65 and N.Y. C.P.L.R. ("CPLR") §§ 6201 and 6210 should not be granted.[1]  *See* Mem. of L. in Supp. of Pl.'s *Ex Parte* Mot. 1, ECF No. 35.  On October 18, 2023, the Court ordered Defendants to show cause why it should not grant Plaintiff's requested relief.  ECF No. 32.  On October 19, 2023, the Court ordered Plaintiff to serve Defendants with copies of all documents associated with its *ex parte* motion.  *See* ECF No. 39.  The parties appeared before the Court for oral argument on October 20, 2023.  *See* Oct. 30, 2023, Tr., ECF No. 48.

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

As relevant here, at the hearing, TKD attorneys again purported to represent all named Defendants.  *See, e.g.*, *id*. at 2:7-8, 23:3-18.  Ruling from the bench following oral argument, the Court denied Plaintiff's TRO motion, concluding that (1) Plaintiff failed to justify its need for emergency relief; (2) Plaintiff failed to establish a real risk that a future judgment could not be enforced against the Defendants, particularly given that all Defendants had ostensibly appeared; and (3) Plaintiff failed to establish its entitlement to the broad relief it sought.  *See id.* at 40:13-42:16.  Following the hearing, the Court granted Plaintiff's request for limited expedited discovery to determine, *inter alia*, the Defendants' addresses, and ordered a briefing schedule for Plaintiff's motion for preliminary injunction.  *See* Order 4-5, ECF No. 47.

### C.  *Withdrawal of Counsel and Further Argument*

On November 1, 2023, TKD attorneys, who had previously held themselves out as attorneys for all Defendants, *see* Lekht Notice of Appearance; Berkowitz Notice of Appearance; Rotberg Notice of Appearance, ECF No. 42; Hudak Notice of Appearance, ECF No. 43, filed a motion to withdraw as attorneys for Defendants Aomore-US, Ropwol, and Yucmed Store.  *See* Mot. to Withdraw, ECF No. 50.  Counsel stated that "[i]n short, Defendants Aomore-US[,] Ropwol, and Yucmed Store never engaged TKD as counsel, and TKD does not represent them." *Id*. at 2.  Plaintiff did not oppose the motion but sought to cross-move for relief to address alleged prejudice caused by TKD's conduct.  *See* ECF No. 52.  The Court granted both the TKD attorneys' motion to withdraw as counsel for Yucmed Store and the Unrepresented Defendants, and Plaintiff's request to move for sanctions.  *See* ECF No. 55.  Yucmed Store subsequently retained TKD's services, on November 13, 2023.  *See* ECF Nos. 63-66.  TKD explained that after its erroneous appearance on behalf of and subsequent withdrawal as attorneys for Yucmed Store, Yucmed Store "contacted TKD and engaged TKD to represent it in this litigation."  Nov. 13, 2023, Letter, ECF No. 67.

On November 13, 2023, Defendant Yucmed Store filed a motion to dismiss Plaintiff's Complaint and vacate the Court's alternative service order.  *See* ECF No. 68.  All other Represented Defendants followed suit on December 4, 2023.  *See* ECF No. 81.  On December 11, 2023, Plaintiff filed a motion for default judgment as to the Unrepresented Defendants.  *See* ECF No. 84.  These and all other motions discussed herein are now fully briefed before the Court.

The parties appeared before the Court for further oral argument on January 12, 2024.  *See* Jan. 12, 2024, Tr., ECF No. 123.  As is relevant here, at that argument, the Court asked Plaintiff how it had verified that its third-party consultant, Viking, had made reasonable efforts to ensure that Defendants' addresses were not known.  *See id.* at 16:1-3.  Plaintiff's counsel represented that "[i]t's not in the record, and [Plaintiff's counsel was] not aware" of the steps Viking took to discover the addresses.  *Id*. at 16:4-5.

## DISCUSSION

The Court concludes that service was improper, and therefore grants Defendants' motion to vacate the Alternative Service Order and quashes service on Defendants.  As a consequence, Plaintiff's motions for a preliminary injunction, default judgment, and attachment are denied, without prejudice to renewal.  In addition, the Court grants Defendants' motions to dismiss Plaintiff's indirect infringement and pre-suit damages claims only; Defendants' motions to dismiss are otherwise denied.  Lastly, because the Court concludes that TKD attorneys acted negligently or recklessly in purporting to represent and in arguing on behalf of the Unrepresented Defendants, the Court grants in part Plaintiff's motion for sanctions.

### I.    Service

For the reasons discussed below, the Court concludes that service on Defendants was improper.

### A. *Legal Standards*

Rule 4(f), which governs service on defendants "in a foreign country," states as follows:

Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . .

> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).  "[Rule 4(f)] . . . operates as a counterpart to [Rule] 4(e), which . . . sets forth the rules by which service can be effected in a judicial district of the United States," i.e., domestically.  *Convergen Energy LLC v. Brooks*, No. 20 Civ. 3746, 2020 WL 4038353, at *3 (S.D.N.Y. July 17, 2020).[2]

Service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." *Prediction Co. LLC v. Rajgarhia*, No. 09 Civ. 7459, 2010 WL 1050307, at *1 (S.D.N.Y. Mar. 22, 2010) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). "The decision of whether to order service of process under Rule 4(f)(3) is committed to the sound discretion of the district court."  *United States v. Lebanese Canadian Bank*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012).  In determining whether to issue an order permitting alternative service under Rule 4(f)(3), "a Court may fashion means of service on an individual in a foreign

---

[2] Unless otherwise noted, when quoting judicial decisions, this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

country, so long as the ordered means of service (1) *is not prohibited by international agreement*; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 Civ. 6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (emphasis added).

Service on defendants residing abroad is generally effectuated through the Hague Convention, a multilateral treaty intended "to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). "Compliance with the Convention is mandatory in all cases to which it applies." *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1389 (S.D.N.Y. 2022) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988)), *appeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*, No. 22 Civ. 1810, 2023 WL 3220461 (2d Cir. May 3, 2023). The Hague Convention applies by its terms to "service abroad." Hague Convention, art. 1. "[B]inding Supreme Court precedent indicates that the Hague Convention outlines specific methods of service, and that methods of service *that are not specifically authorized are impermissible* under the Convention." *Smart Study*, 620 F. Supp. 3d at 1393 (emphasis added); *see also id.* at 1396 ("To infer that the Convention's silence as to a particular method equates to an implied permission to use virtually any method of service not proscribed by the Convention contravenes [its] purpose.").[3]

## B. Application

Service on Defendants was improper. On the record before the Court, Plaintiff has not demonstrated that it exercised reasonable diligence to discover Defendants' physical addresses, but was unable to do so, as is required to establish that a party's address is unknown, such that the Hague Convention is inapplicable. Therefore, the Hague Convention applies to service on all

---

[3] For further discussion on allowable forms of service in China, see *Smart Study*, 620 F. Supp. 3d at 1397-99.

Defendants.  As to the Unrepresented Defendants and Yucmed Store, the Court concludes that service via email on Chinese Defendants was impermissible under the Hague Convention.  As to the remaining Represented Defendants, the Court concludes that service on Chinese Defendants via U.S.-based counsel is not permitted by the Hague Convention.

### i.  Preliminary Matters

Plaintiff argues that service was proper because (1) it was effectuated pursuant to the Court's Alternative Service Order, which purportedly cannot now be vacated; and (2) an exception to the Hague Convention, providing that the Convention does not apply to a party whose address is unknown, applies to this case.  The Court addresses each in turn and concludes that neither argument is meritorious.

***Alternative Service Order***.  Plaintiff asserts that because Defendants' deadline to move for reconsideration of the Alternative Service Order in this case "expired on September 26, 2023," and because the facts have not changed since the Court issued that Order, Defendants may not now challenge it.  *See* Pl.'s Mem. of L. in Opp'n to Appearing Defs.' Joint Mot. to Dismiss Pl.'s Compl. and to Vacate the Court's Order Authorizing Alt. Service ("Pl.'s MTD Opp'n") 1, 3-5, ECF No. 93.  Plaintiff is incorrect.  Defendants have not moved for reconsideration; they have moved to vacate the Alternative Service Order.  *See generally* Def. Yucmed Store's Mem. in Supp. of Mot. to Dismiss Compl. and Vacate Court's Order Authorizing Alt. Service ("Yucmed's MTD Br."), ECF No. 69; Def.s Leqiong, Monkki, Oncemore, and Chenghai's Mem. in Supp. of Mot. to Dismiss Compl. and Vacate Court's Order Authorizing Alt. Service ("Def.s' MTD Br."), ECF No. 82.  Moreover, before a court may award relief, it must assure itself that "the procedural requirement of service of summons [has been] satisfied."  *Smart Study*, 620 F. Supp. 3d at 1389.  Indeed, that is what the court did while considering a motion for default judgment in *Smart Study*.  *See id.* at 1389-90.  There, as here,

the court had authorized alternative service via email under Rule 4(f)(3)—and had even granted emergency relief.  But subsequently, in considering the plaintiff's motion for default, the court reassessed its previous order authorizing alternative service, and deemed it erroneous.  *See id.* at 1391 n.5.

As discussed below, the Court concludes—with the aid of full briefing and oral argument—that the Alternative Service Order was "in error" and therefore vacates it.  *See id.*[4]

**Whether Defendants' Addresses Were Unknown**.  Plaintiff argues that the Hague Convention does not apply to any of the Defendants because Defendants' addresses were "unknown."  *See* Pl.'s MTD Opp'n 6.  "The Hague Convention does not apply where the address of the person to be served with the document is not known."  *Pinkfong Co. v. Avensy Store*, No. 23 Civ. 9238, 2023 WL 8531602, at *2 (S.D.N.Y. Nov. 30, 2023).  However, "[a]n address is not known [for the purposes of the Hague Convention] *if* the plaintiff exercised *reasonable diligence* in attempting to discover a physical address for service of process and was unsuccessful in doing so."  *Id.* (emphases added); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (same).  What constitutes "reasonable diligence" is a fact-specific inquiry, and "[c]ourts in this District have consistently held that multiple modes of attempted contact typically are required."  *Kyjen Co. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Compl.*, No. 23 Civ. 612, 2023 WL 2330429, at *3 (S.D.N.Y. Mar. 2, 2023) (citing cases); *see also Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22 Civ. 558, 2022 WL 3701216, at *7

---

[4] The undersigned notes, at the time the motion for alternative service was granted, Plaintiff had represented to the Court that Defendants' addresses were unknown.  Moreover, Defendants had not yet appeared, rendering Plaintiff's motion unopposed and requiring the Court to decide on Plaintiff's motion for alternative service "in a vacuum."  *Smart Study*, 620 F. Supp. 3d at 1391 n.5.  But, as noted, the Court now has the benefit of full briefing on the issue.

(S.D.N.Y. Aug. 26, 2022) (finding that the plaintiff exercised reasonable diligence through "extensive and multi-dimensional efforts[,]" including dispatching local counsel to determine whether physical addresses were associated with defendants).

Here, to uncover Defendants' physical addresses, Plaintiff asked unidentified individual(s) associated with a third-party law firm, Viking, whether Defendants' Amazon-listed addresses appeared to be correct. *See* Jan. 12, 2024, Tr. 14:8-23; Cormier Decl. ¶ 14, ECF No. 16. "Viking informed Spin Master that the Defendants' name and address information that they had provided to Amazon appeared inaccurate." Cormier Decl. ¶ 14. Plaintiff did not explain the basis for that assessment, or what steps, if any, Viking took to confirm this appearance of inaccuracy. And on the record before the Court, counsel confirmed that they were "not aware" of the steps Viking took but believed that "Viking's assessment was based on its experience in the field." Jan. 12, 2024, Tr. 15:23-25, 16:4-5. There is nothing in the record indicating that Plaintiff or Viking took steps such as attempting to send mail to Defendants' addresses listed on Amazon, or other measures that courts have found sufficient to demonstrate reasonable diligence. *See, e.g.*, *Cawthon v. Yaoyage,* No. 22 Civ. 7279, 2024 WL 95055, at *2 (S.D.N.Y. Jan. 9, 2024) (finding no reasonable diligence where the plaintiff failed, *inter alia*, to dispatch a private investigator to conduct in-person visits or contact Defendant's local counsel); *cf. Zuru (Sing.) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483, 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (finding reasonable diligence where the plaintiffs and local counsel conducted "further online research, sent mail to the addresses, and conducted in-person visits" to determine whether physical addresses provided by Amazon were accurate).

The Court is not aware of any authority supporting the proposition that merely hiring a consulting service, with no explanation of what steps the service took (if any) to verify defendants' addresses, constitutes reasonable diligence. For their part, Defendants have

represented that the address information provided on Amazon's website was correct from the start. *See* Jan. 12, 2024, Tr. 8:22-9:12. Plaintiff may have uncovered this itself (or could have developed a record sufficient to contest that representation) had it exercised reasonably diligent efforts to discover Defendants' addresses.

Thus, on this record, there is insufficient evidence for the Court to conclude that Defendants' addresses are "not known" for the purposes of the Hague Convention. *See Safavieh Intl., LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, No. 23 Civ. 3960, 2023 WL 3977505, at *6 (S.D.N.Y. June 13, 2023) (finding the plaintiff did not exercise reasonable diligence because "[t]here [was] no evidence in the record that suggest[ed] Plaintiff [took] any steps to confirm or deny whether the physical address provided [wa]s appropriate for service"). Because Plaintiff has not demonstrated that Defendants' addresses were unknown, it has failed to demonstrate that the Hague Convention is inapplicable.

The Court turns next to discussing why service on each group of Defendants in this case was improper.

### ii. Service on Yucmed Store and Unrepresented Defendants

"[P]laintiff[] bear[s] the burden of proving that service was adequate," *Smart Study*, 620 F. Supp. 3d. at 1389, and has failed to do so here.

The Alternative Service Order allowed service under Rule 4(f)(3) via email to Yucmed Store and the two Unrepresented Defendants. *See* Alt. Service Order. As alluded to *supra*, the Court now concludes that this Order was in error. An alternative method of service under Rule 4(f)(3) is proper so long as it (1) is not prohibited by international agreement, and (2) comports with constitutional notions of due process. *See Anticevic*, 2009 WL 361739, at *3.

On the first point, district courts have held that "service via email on litigants located in China is not permitted by the Hague Convention . . . or [by] the Federal Rules of Civil

12

Procedure." *Smart Study*, 620 F. Supp. 3d at 1393, 1385 (citing cases).  "The Court is persuaded by Judge Woods' in-depth analysis in *Smart Study* that, in light of China's objections to the Hague Convention, it 'prohibits service by email on defendants located in China,' and exigent circumstances – such as the need for urgent relief – do not create an exception to this rule." *Shenzhen Chengront Tech. Co. v. Besign Direct*, No. 22 Civ. 10281, 2022 WL 17741496, at *2 (S.D.N.Y. Dec. 9, 2022) (quoting *Smart Study*, 620 F. Supp. 3d at 1397).  This Court therefore joins the many other district courts that have similarly concluded that service on Chinese Defendants via email is improper.  *See, e.g.*, *Moonbug Ent. Ltd. v. www.blippimerch.com*, No. 23 Civ. 1384, 2023 WL 2730107, at *3 (S.D.N.Y. Mar. 28, 2023) (explaining that, for Chinese defendants, "service via email and online publication is 'prohibited by international agreement [and] is impermissible under Rule 4(f)(3)'" (quoting *Smart Study*, 620 F. Supp. 3d at 1392); *Shen Zhen v. Jiangsu Huari Webbing Leather Co.*, No. 23 Civ. 4578, 2023 WL 6553969, at *1 (S.D.N.Y. Sept. 12, 2023) ("Service by email 'on litigants in China is prohibited by the Hague Convention[.]'" (quoting *Smart Study*, 620 F. Supp. 3d at 1397)); *Kyjen Co.*, 2023 WL 2330429, at *1 ("Rule 4(f) requires that the defendants be served pursuant to the Hague Convention, which has been interpreted to prohibit service by email and online publication on litigants located in China.").

Service via email to Yucmed Store and the two Unrepresented Defendants was therefore improper in this case.

### iii.  Service on Represented Defendants, Excluding Yucmed Store

The Alternative Service Order allowed service on Represented Defendants, excluding Yucmed Store, via U.S.-based counsel Feigin.  *See* Alt. Service Order.  Plaintiff had moved for alternative service under Rule 4(f), which "provide[s] flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process *in foreign*

*countries*," because Represented Defendants are located and would be served in China.  *See* Alt. Service Br. 6 (emphasis added).  Plaintiff, however, also argues that service on Represented Defendants would not implicate the Hague Convention because the Court had "authorized service of process via their **United States** counsel."  Pl.'s MTD Opp'n 5 (emphasis in original). But Plaintiff cannot have it both ways: service cannot be both completed in China for purposes of invoking Rule 4(f), while at the same time also completed in the United States for purposes of avoiding the requirements of the Hague Convention.

First, service under Rule 4(f) must be completed abroad.  The text of Rule 4(f) makes clear that Plaintiff can only avail itself of the Rule if service would occur abroad and "*not within* any judicial district of the United States" (emphasis added).  That is, "the court cannot enter a Rule 4(f)(3) order permitting service on a foreign individual at a place not within a judicial district of the United States when the person to whom the complaint and summons is to be delivered and as to which service is deemed to be effective is at a place within the United States."  *Convergen Energy LLC*, 2020 WL 4038353, at *7.  Courts have, however, authorized service under Rule 4(f) on foreign defendants via U.S.-based counsel in some circumstances— but only where "U.S. counsel is a conduit to the service that is effectuated at a place not within any jurisdiction of the United States."  *United States v. Mrvic*, 652 F. Supp. 3d 409, 413 (S.D.N.Y. 2023).  Put another way, Rule 4(f) permits a method of service that entails transmitting documents through U.S. counsel, but only if service is ultimately *completed* abroad.

Second, because service under Rule 4(f) is completed abroad, such service must comport with the requirements of the Hague Convention.  As explained *supra*, the Convention itself is clear that it applies when service requires the transmittal of documents abroad.  And Rule 4(f)(3) provides that service under the Rule must be effectuated by "means not prohibited by international agreement," including the Hague Convention.  Thus, regardless of how the relevant

14

documents ultimately make their way abroad—whether directly, or through a U.S.-based intermediary—service under Rule 4(f) must comport with the requirements of the Hague Convention.

Next, the Hague Convention does not permit service on Chinese parties via email through counsel.  The Hague Convention prohibits any service methods "not specifically authorized" by the Convention's terms.  *See Smart Study*, 620 F. Supp. 3d at 1393 (citing *Water Splash, Inc.*, 581 U.S. at 273).[5]  It is silent as to service via counsel or via electronic means, *see* the Hague Convention, and Plaintiff identifies no authority demonstrating that China affirmatively allows such service.  Such service is thereby "prohibited by international agreement."  *Stansell v. Revolutionary Armed Forces of Colom.*, No. 16 Misc. 405, 2023 WL 6173524, at *5 (S.D.N.Y. Sept. 22, 2023) (denying motion to serve foreign defendants through counsel given movant's failure to demonstrate that "service on counsel is not barred—read: is explicitly authorized—by the Hague Convention").

Plaintiff attempts to avoid this problem by arguing that the Hague Convention does not apply because service here was complete upon receipt of the Complaint and summons by Represented Defendants' U.S.-based counsel.  And, indeed, some courts in this District have employed the same reasoning, concluding that alternative service through U.S.-based counsel "would not run afoul of the Hague Convention since . . . no documents would be transmitted abroad."  *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (citing

---

[5] *See also id.* at 1394:

> Articles 11 and 19 [of the Hague Convention] provide ready tools to permit countries to expressly permit service by email.  And those articles would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services.

*Volkswagenwerk*, 486 U.S. at 703); *see also* Pl.'s MTD Opp'n 5-6 (citing cases stating the same). These cases generally rely on *Volkswagenwerk*, 486 U.S. 694, and/or on a decision in this District, *GLG Life Tech*, 287 F.R.D. 262, which itself relies on *Volkswagenwerk*.[6]

But *Volkswagenwerk* does not address the scope of a court's authority to authorize alternative service under Rule 4(f).  Nor does it stand for the broad proposition that service on a U.S.-based agent is a permissible means of avoiding the requirements of the Hague Convention. Rather, the relevant language from *Volkswagenwerk* pertained to the relatively idiosyncratic facts of that case.  There, service was authorized on a foreign defendant's U.S.-based affiliate, "which under [Illinois] state law, is the foreign corporation's involuntary agent for service of process," and the Illinois appellate court held "that service was proper as a matter of Illinois law." *Volkswagenwerk*, 486 U.S. at 696, 706.  The Supreme Court explained that "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the [Hague] Convention has no further implications." *Id.* at 707.  That is, in *Volkswagenwerk*, service was effectuated under Illinois law entirely *within* the United States, without the transmittal of any documents abroad—and under those circumstances, the Hague Convention did not apply.  *See id* at 707-08.

---

[6] *See, e.g.*, *In re New Oriental Educ. & Tech. Grp. Inc. Sec. Litig.*, No. 22 Civ. 1014, 2023 WL 5466333, at *3 (S.D.N.Y. Aug. 24, 2023) (approving service through U.S. corporate counsel because "the Hague Convention governs 'only . . . transmittal of documents *abroad* that is required as a necessary part of service'" (quoting *Volkswagenwerk*, 486 U.S. at 707)); *In Re Fairfield Sentry Ltd.*, No. 10 Bankr. 13164, 2020 WL 7345988, at *12 (Bankr. S.D.N.Y. Dec. 14, 2020) (collecting cases, including *GLG Life Tech*, and noting that "the majority [of courts] view service on U.S.-based counsel a permissible method under Rule 4(f)(3)"); *RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) ("The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service through American counsel . . . [because] the *only* transmittal to which the Hague Service Convention applies is a *transmittal abroad that is required* as a necessary part of service." (quoting *Volkswagenwerk*, 486 U.S. at 707)).

The Supreme Court has cautioned that "[i]f the internal law of the forum state defines the applicable method of serving process as requiring transmittal of documents abroad, then the Hague Service Convention applies." *Id.* at 700.  In other words, if, as a legal matter, completion of service requires that documents be transmitted abroad, then that triggers international obligations under the Hague Convention.  Thus, in determining whether the Hague Convention applies, what matters is where service is deemed complete.  In *Volkswagenwerk*, service was deemed complete under Illinois law inside the United States, so the Hague Convention did not apply.  But if service had been deemed complete only upon the transmittal of documents abroad, then the requirements of the Hague Convention would have applied.  And here, Plaintiff relies on Rule 4(f), which authorizes service "not within any judicial district"—i.e., abroad.  Accordingly, the Hague Convention applies, and because China has not authorized service via counsel, it is not permitted here.

In sum, Plaintiff cannot have it both ways.  Service cannot be outside of the United States for purposes of invoking Rule 4(f), but inside the United States for purposes of avoiding the requirements of the Hague Convention.  Service was either completed abroad in China, in which case the method requested by Plaintiff is prohibited by the Hague Convention; or it was completed in the United States, in which case it is not authorized under Rule 4(f).[7]  *See Convergen Energy, LLC*, 2020 WL 4038353, at *9 ("The language of [Rule 4(f)] is clear, and that language does not permit the Court to order alternative service at a place outside any judicial

---

[7] If Plaintiff is arguing that service should be deemed complete when made on a U.S.-based agent, then it may seek to rely on Rule 4(e), which governs alternative service within a judicial district of the United States, rather than on Rule 4(f).  But Rule 4(e) permits service on an agent only if the agent is "authorized by appointment or by law to receive" it.  Fed. R. Civ. P. 4(e)(2)(C).  And the record here includes no indication of such authorization.

district of the United States when the service would be made in a judicial district of the United States.").

\*       \*       \*

The Court is sympathetic to Plaintiff's position.  Plaintiff understandably sought to avoid service of process through the Central Authority which, in its consultant's estimation, could take "18-24 months."  Alt. Service Br. 2.  The Court acknowledges that the result here is cumbersome and will undoubtedly result in challenges for Plaintiff and other parties in similar situations.  *See Convergen Energy, LLC*, 2020 WL 4038353, at \*8 (acknowledging the result "may cause a certain inconvenience to a plaintiff and to the courts").  However, this result is, as best as this Court can see, the product of the interaction of the clear language of Rule 4(f)—which does not permit the Court to authorize foreign service domestically—and our international obligations to China under the Hague Convention, which does not affirmatively authorize the forms of service utilized by Plaintiff here.  *See Smart Study*, 620 F. Supp. 3d at 1402.

Plaintiff also understandably underscores that Defendants had actual notice, as Defendants' purported former counsel, Feigin, "admitted that his clients (Chenghai, Leqiong, Onecemore, and Monkki) received the papers, and Yucmed's counsel admitted that Yucmed received Spin Master's emails."  Pl.'s MTD Opp'n 8.  But the law requires more than actual notice, and "[t]o allow actual notice to serve as service . . . would not advance the purposes of the Hague Convention."  *Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 567 (S.D.N.Y. 2013). Plaintiff also points to Defendants' appearance to underscore the effectiveness of service.  Pl.'s MTD Opp'n 3.  "[L]imited participation in pretrial proceedings does not result in waiver of the defense [of ineffective service], even where the defendant has actual knowledge of the suit." *Arthur Williams, Inc. v. Helbig*, No. 00 Civ. 2169, 2001 WL 536946, at \*2-3 (S.D.N.Y. May 21, 2001) (holding further that the defendant's "submission of papers in opposition to a motion . . .

18

and [its] appearance at a pretrial conference in reference to that motion" was sufficiently limited such that its "conduct does not constitute a waiver of the defense of sufficiency of service of process").[8]  Notwithstanding Defendants' actual notice of this suit, "the Court may not ignore the text of Rule 4(f), the Hague Convention, and Chinese law in order to make service more efficient for Plaintiff."  *Smart Study*, 620 F. Supp. 3d at 1402.

Service as to all Defendants was improper, and absent contrary instruction from a higher court, this Court may not authorize a different result.

### C.  Consequences of Improper Service

Given that no Defendant was properly served—and not because Plaintiff failed to make a strong showing in its briefing and at oral argument—Plaintiff's motion for a preliminary injunction is denied without prejudice to renewal.  Similarly, because Defendants were never properly served, Plaintiff's motions for default judgment and attachment are denied without prejudice to renewal.  As discussed further in the next section, however, the Court does not dismiss the case due to improper service.  Instead, finding that Plaintiff has alleged facts sufficient to demonstrate this Court's personal jurisdiction, it will allow Plaintiff to perfect service.

### II.  Defendants' Process-Related Defenses

Defendants seek to dismiss this case under Rules 12(b)(2), 12(b)(4), and 12(b)(5), for insufficient service of process and lack of personal jurisdiction.  *See* Yucmed's MTD Br. 1; Defs.' MTD Br. 1.  For the reasons discussed herein, the Court rejects Defendants' motions.  It concludes that Plaintiff may perfect service and has established the Court's personal jurisdiction pursuant to New York's long-arm statute.

---

[8] Notably, Defendants' counsel raised the service issue promptly, around one month after appearing.  *See* ECF No. 68.

### A. *Legal Standards*

#### i. **Rule 12(b)(2)**

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of showing that the court has jurisdiction over the defendant. Prior to discovery, a

plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).   "When

evaluating whether an out-of-state corporation is subject to the personal jurisdiction of a foreign

forum, the district court must first consider the applicability of the relevant state statutory long-

arm provision."   *Del Ponte by Del Ponte v. Universal City Dev. Partners*, No. 07 Civ. 2360,

2007 WL 9819187, at *3 (S.D.N.Y. July 13, 2007) (citing *Metro. Life Ins. Co.*, 84 F.3d at 567),

*report and recommendation adopted sub nom. Del Ponte v. Universal City Dev. Partners*, No. 07

Civ. 2360, 2008 WL 169358 (S.D.N.Y. Jan. 16, 2008).   Should the Court conclude that New

York's long-arm provision provides it with personal jurisdiction here, it "must then consider

whether the exercise of such statutory long-arm jurisdiction would be in compliance with the

Due Process Clause of the Fourteenth Amendment."   *Id.*

#### ii. **Rules 12(b)(4) and 12(b)(5)**

"Rule 12(b)(4) provides for the defense of insufficient process."   *Vega v. Hastens Beds*,

*Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021).   "Rule 12(b)(5) permits a party to move for dismissal

of a complaint based on inadequate service of process."   *George v. Pro. Disposables Int'l, Inc.*,

221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016).   The distinction between the two is as follows:

> An objection under Rule 12(b)(4) concerns the form of the process rather than the
> manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is
> proper only to challenge noncompliance with the provisions of Rule 4(b) or any
> applicable provision incorporated by Rule 4(b) that deals specifically with the
> content of the summons. A Rule 12(b)(5) motion is the proper vehicle for
> challenging the mode of delivery or the lack of delivery of the summons and
> complaint.

*Vega*, 339 F.R.D. at 215.  Under either motion, dismissal "will be granted only when the defect is prejudicial to the defendant; . . . [o]therwise[,] the court will allow an amendment of the process to correct the defect."  Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. § 1353 (4th ed. 2024).  "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."  *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*, No. 13 Civ. 7639, 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016); *accord Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).  "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction."  *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).

### B.  Application

#### i.  Rule 12(b)(2)

Defendants' Rule 12(b)(2) motion is denied, as Plaintiff has pleaded "legally sufficient allegations of jurisdiction."  *Metro. Life Ins. Co.*, 84 F.3d at 566.

Under New York's long-arm provision, N.Y. CPLR § 302(a)(1), a defendant is subject to personal jurisdiction in this Court "if (1) the defendant transacted business within the state; and (2) the claim asserted arises from that business activity."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F. 3d 161, 166 (2d Cir. 2013).

Plaintiff has adequately alleged that "each" of the Defendants "transacted business within the State of New York and [] contracted to supply the infringing goods in the state."  Compl. ¶ 12.  More specifically, Plaintiff alleges that all Represented Defendants but Chenghai "offered to sell wall-climbing toy vehicles in the United States, including in New York, via Amazon."  *Id.* ¶ 25.  Plaintiff has also submitted evidence that Defendants sold and shipped Accused Products

to a person in New York.  *See* ECF No. 37 at ¶¶ 5-9; *id.* at Exs. 5-9 (showing proof of purchase

of the Accused Products in and to NY).  Chenghai, which manufactured the Accused Products,

"has conducted testing of one or more of the Accused Products in the United States," Compl. ¶

29; "distributes the Accused Products to the Amazon Sellers intending that they be offered for

sale and sold in the United States," *id.* ¶ 31; "import[s] the Accused Products into the United

States from China," *id.* ¶¶ 32, 42, 52, 62, 72, 82; and has filed with the FCC seeking

certifications for the Accused Product, *see* Skale Decl. ¶ 2, Ex. A.[9]

There can be no serious doubt that Plaintiff's patent infringement claims arise directly

from these New York transactions.  Accordingly, Plaintiff has met its burden by "rais[ing] non-

frivolous contentions that there was a basis for personal jurisdiction." *Newbro v. Freed*, 337 F.

Supp. 2d 428, 430 (S.D.N.Y. 2004); *see, e.g.*, *Mattel, Inc. v. Animefun Store*, No. 18 Civ. 8824,

2020 WL 2097624, at *4 n.7 (S.D.N.Y. May 1, 2020) ("[C]ourts in this District have routinely

found personal jurisdiction over China-based defendants who operate storefronts on online

marketplaces such as Amazon"); *Evriholder Prod. LLC v. Simply LBS Ltd. Co.*, No. 17 Civ.

4329, 2020 WL 7060336, at *4 (S.D.N.Y. Apr. 21, 2020) ("Plaintiff alleges that Simply LBS

maintained a large-scale online marketplace on Amazon.com, offered the Infringing Product for

sale, through that marketplace, in New York, and 'shipped [the Infringing Product] into New

York State and specifically into the Southern District of New York.' These allegations satisfy the

requirements of CPLR § 302(a)(1).").

While there are theoretically cases in which personal jurisdiction could be permissible

under CPLR § 302(a)(1) yet prohibited by the Due Process Clause, the Second Circuit has

---

[9] Plaintiff raises an alternative argument: that the Court has personal jurisdiction over Chenghai
under Rule 4(k)(2).  *See* Compl. ¶ 13.  Because the Court concludes that it may assert jurisdiction
over Chenghai under New York's long-arm statute, it need not address this alternative argument.

cautioned that it "would expect such cases to be rare." *Licci*, 732 F.3d at 170 (noting further that

the court was aware of "no such decisions").  This case does not present one of those rare

exceptions.  Drawing all reasonable inferences in Plaintiff's favor for the purposes of this

motion, Plaintiff has alleged that Defendants had sufficient "minimum contacts" with New York

for the exercise of personal jurisdiction over them to comport with the Due Process Clause.  *See*

*Astor Chocolate Corp. v. Elite Gold Ltd*., 510 F. Supp. 3d 108, 127 (S.D.N.Y. 2020) (holding

that where defendants "marketed the infringing products to New York customers on

Amazon.com," their transactions with New York were "sufficient to establish minimum contacts

under the Due Process Clause.").

Accordingly, Defendants' Rule 12(b)(2) motion is denied.

### ii.   Rules 12(b)(4) and 12(b)(5)

As discussed *supra*, the Court has determined that service was improper in this case.

"Upon a finding of insufficient service, the Court may dismiss the case or may, in its discretion,

retain the case, quash service, and direct that service be effectuated properly."  *Vega*, 339 F.R.D.

at 217; *see also Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs.,* 775 F. Supp. 133, 138 n.2

(S.D.N.Y. 1991) ("[D]ismissal is not mandatory when service of process is improper.  [Rather,]

Rule 12(b)(5) . . . offer[s] the court a course of action other than simply dismissing the case when

defendant's defense . . . is sustained.").  Courts are particularly inclined to preserve an action

where "there is a reasonable prospect that plaintiff will ultimately be able to serve the defendant

properly."  *Unite Nat'l Ret. Fund v. Ariela, Inc*., 643 F. Supp. 2d 328, 334 (S.D.N.Y. 2008); *see*

*also Aries Ventures Ltd. v. Axa Fin. S.A*., 729 F. Supp. 289, 303 (S.D.N.Y. 1990) (declining to

dismiss for lack of proper service where defendants "clearly had actual notice of the present

action").

That is precisely the situation here.  Represented Defendants have appeared before the Court and have fully briefed several motions, and Plaintiff is now in receipt of "a sworn statement" confirming the accuracy of Defendants' address information.  Jan. 12, 2024, Tr. 9:7-9.  It is thus reasonably likely that Plaintiff will be able to serve Represented Defendants properly, in compliance with international law.  Defendants have not shown that any prejudice to them would justify precluding Plaintiff from perfecting service.  The Court within its discretion therefore declines to dismiss this case and, as discussed further below, orders Plaintiff to initiate service within thirty (30) days.

## III.    Defendants' Substantive Defenses

Defendants seek to dismiss this case under Rule 12(b)(6), for failure to state a claim.  *See* Yucmed's MTD Br. 1; Def.s' MTD Br. 1.  Notwithstanding Plaintiff's insufficient service on Defendants, the Court may within its discretion address Defendants' substantive defenses.  *See, e.g.*, *Tomney v. Int'l Ctr. for the Disabled*, No. 02 Civ. 2461, 2003 WL 1990532 (S.D.N.Y. Apr. 29, 2003) (finding insufficient service, ordering proper service, and addressing failure to state a claim arguments); *Rana v. Islam*, 305 F.R.D. 53 (S.D.N.Y. 2015) (finding insufficient service, ordering proper service, and addressing immunity and failure to state a claim arguments).  For the reasons discussed herein, the Court grants in part Defendants' motions.

### A.  *Legal Standards*

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018).  A court may not dismiss claims unless the plaintiff has failed to plead facts sufficient to state a claim to relief that is facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, a plaintiff

must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, the complaint must state nonfrivolous allegations of infringement with sufficient factual content that, if accepted as true, would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* at 663. Plaintiff raises allegations of direct and indirect infringement. *See* Compl. ¶¶ 42, 52, 62, 72, 82. Under the applicable statutory provision, 35 U.S.C. § 271 ("Section 271"), direct infringement occurs where a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor," *id*. at § 271(a), and indirect infringement occurs where a party "actively induces infringement [by others] of a patent." *Id.* at § 271(b).

## B.  Application

For the reasons discussed herein, Plaintiff's direct infringement claims survive but its indirect infringement and pre-suit damages claims are dismissed.[10]

### i.  Direct Infringement

Plaintiff's direct infringement claims easily survive Defendants' motion to dismiss. Plaintiff alleges that all Represented Defendants but Chenghai infringed its patents by selling and offering to sell "wall-climbing toy vehicles in the United States, including in New York, via Amazon," and provides specific identifying numbers for the Accused Products. *See* Compl.

---

[10] "[D]istrict courts look to Federal Circuit law in evaluating substantive issues unique to patent law, since those issues fall within the exclusive jurisdiction of the Federal Circuit." Charles Wright & Arthur R. Miller, 17 Fed. Prac. & Proc. Juris. § 4104 (3d ed. 2024). Accordingly, throughout this section, the Court cites caselaw from the Federal Circuit, or caselaw from this circuit that comports with Federal Circuit precedent. In so doing, the Court declines Plaintiff's invitation to apply Second Circuit caselaw that may conflict with Federal Circuit caselaw. *See* Pl.'s MTD Opp'n 19-20.

¶¶ 25, 33, 42-43, 52-53, 62-63, 72-73, 82-83.  Plaintiff additionally alleges that Chenghai

manufactures the Accused Products sold by Defendants Ropwol and Leqiong; conducted testing

of one or more Accused Products in the United States; is working in concert with some or all of

the Amazon Sellers to sell Accused Products in the United States; and distributes Accused

Products to the Amazon Sellers intending that they be offered for sale and sold in the United

States, in violation of Section 271.  *Id*. at ¶¶ 7, 26, 29-32, 42, 52, 62, 72, 82.

These allegations "allow[] the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  That is sufficient for Plaintiff's direct

infringement claims to survive a motion to dismiss.  *See Intell. Ventures II LLC v. JP Morgan

Chase & Co*., No. 13 Civ. 3777, 2015 WL 3855069, at *5 (S.D.N.Y. June 22, 2015) (holding that

plaintiffs are not required to provide, "prior to the completion of discovery, a detailed

explanation of how each accused product infringes or the plaintiffs' precise theory of

infringement"); *see also Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir.

2017) (noting that to survive a motion to dismiss, a complaint need only "place the alleged

infringer on notice of what activity . . . is being accused of [direct] infringement.").

### ii.  Indirect Infringement

Plaintiff's indirect infringement claims cannot survive Defendants' motion to dismiss, as

Plaintiff fails to plead that any Defendant "possessed specific intent to encourage another's

infringement" of Plaintiff's patents.  *Pecorino v. Vutec Corp*., 934 F. Supp. 2d 422, 447

(E.D.N.Y. 2012).

A claim of "induced [indirect] infringement under § 271(b) requires knowledge that the

induced acts *constitute patent infringement*."  *Glob.-Tech Appliances, Inc. v. SEB S.A*., 563 U.S.

754, 766 (2011) (emphasis added); *see also Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301,

1322 (Fed. Cir. 2009) ("[I]nducement requires evidence of culpable conduct, directed to

encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities").

Here, Plaintiff argues that the Complaint alleges that Defendants "had actual knowledge" of Spin Master's patents, Pl.'s MTD Opp'n 18 (citing Compl. ¶¶ 47, 57, 67, 77, 87), and actively induced others to use the Accused Products in the United States.  *Id.* (citing Compl. ¶¶ 42-43, 52-53, 62-63, 72-73, 82-83).  However, "[k]nowledge of the infringement alone is not enough to establish culpability" on an indirect infringement claim.  *LaserDynamics USA, LLC v. Cinram Grp., Inc.*, No. 15 Civ. 1629, 2015 WL 6657258, at *6 (S.D.N.Y. Oct. 30, 2015); *see also Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14 Civ. 502, 2014 WL 1266623, at *3 (D.N.J. Mar. 26, 2014) (dismissing inducement claims where plaintiff only alleged that defendant "knowingly instructed its customers to use the Accused Products").  Because Plaintiff fails to plead that Defendants "specifically intended their customers to infringe [Spin Master's] patent[s] and knew that the customer's acts constituted infringement," *Pecorino*, 934 F. Supp. 2d at 447-48, Plaintiff's indirect infringement claims are dismissed.

### iii.  Pre-Suit Damages

Finally, Plaintiff fails to state a claim for pre-suit damages under the Patent Act.

The Patent Act, 35 U.S.C. § 287(a), requires "patentees and persons making, selling, or importing patented articles" to "give notice that the article is patented by marking the article or its packaging with either the patent number or an online address referencing the patent number." *Blackbird Tech LLC v. Argento SC By Sicura, Inc.*, No. 21 Civ. 11018, 2022 WL 3701084, at *1 (S.D.N.Y. Aug. 26, 2022).  "If a patentee fails to comply with these marking requirements, the patentee may not recover damages incurred before the date that the defendant received actual notice of the infringement."  *Id.* (citing *Arctic Cat Inc. v. Bombardier Recreational Prods Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017)); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345

(Fed. Cir. 2001) ("[T]he amount of damages the patentee can recover . . . is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer notice of infringement.").

"The patentee bears the burden of pleading . . . [that it] complied with § 287(a)'s marking requirement." *Arctic Cat Inc..*, 876 F.3d at 1366 ; *see also BelAir Elecs., Inc. v. Twelve S*., LLC, No. 22 Civ. 4443, 2023 WL 6388810, at *5 (D.S.C. Sept. 29, 2023) (collecting district court cases that have "interpreted Federal Circuit case law to require that a patentee plead compliance with § 287"). "When a complaint does not adequately allege compliance with the marking statute, a claim for pre-litigation damages may be dismissed on a Rule 12(b)(6) motion." *Blackbird Tech LLC*, 2022 WL 3701084, at *2.

Plaintiff does not adequately allege compliance with the marking requirements of 35 U.S.C. § 287(a), and it fails to allege any non-conclusory facts to suggest that Defendants had actual notice of their alleged infringement at any point before this action was filed.  Plaintiff attempts to save its claims by pointing to paragraphs in its Complaint where it alleged that Defendants had knowledge of Plaintiff's patents.  *See* Pl.'s MTD Opp'n 20 (citing Compl. ¶¶ 34, 47-49, 57-59, 67-69, 77-79, 87-89).  But "mere notice of [a] patent's existence or ownership is not notice of the [alleged] infringement," *Gart*, 254 F.3d at 1345, and the pleadings do not otherwise establish Plaintiff's compliance with the marking statute.  Plaintiff's conclusory allegations do not explain, for example, whether Plaintiff's "patented articles were actually marked when entered into commerce." *Blackbird Tech LLC*, 2022 WL 3701084, at *2.  Because Plaintiff has failed to meet its pleading burden, "its claim must be dismissed to the extent it requests damages for infringement that occurred before this action was filed." *Id*.

## IV.    Leave to Amend

The Court concludes that it is in the interest of justice—particularly given Rule 15's

permissive standard—to grant Plaintiff leave to amend its complaint.

### A.  Legal Standards

Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so

requires."  This permissive standard is consistent with courts' "strong preference for resolving

disputes on the merits." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005).  The Second

Circuit and Supreme Court have cautioned that

> this mandate is to be heeded. If the underlying facts or circumstances relied upon
> by a plaintiff may be a proper subject of relief, he ought to be afforded an
> opportunity to test his claim on the merits. In the absence of any apparent or
> declared reason—such as undue delay, bad faith or dilatory motive on the part of
> the movant, repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc.—the leave sought should, as the rules
> require, be "freely given."

*Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371

U.S. 178, 182 (1962)).  Prejudice arises when the amendment would "(i) require the opponent to

expend significant additional resources to conduct discovery and prepare for trial; (ii)

significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a

timely action in another jurisdiction."  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.

1993).  The defendant bears the burden of establishing prejudice.  *See id.*

### B.  Application

Leave to amend is warranted in this case.  Plaintiff has not yet amended its complaint.  It

has explained that if the Court grants its request to amend, it will plead additional facts that

would address the issues regarding its indirect infringement and pre-suit damages, discussed

*supra*.  Specifically, Plaintiff represents that in amended pleadings, it would "allege[] sufficient

29

facts to give Defendants notice of . . . indirect infringement." Pl.'s MTD Opp'n 19. It would address the marking and notice issues described herein by clarifying that "the relevant Spin Master products have **always** been marked." *Id*. at 20-21 (emphasis in original). Defendants have not argued—and the Court does not have any basis to conclude—that "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . . , [or] futility" bar amendment. *Williams*, 659 F.3d at 213-14; *see generally* Defs.' Leqiong, Monkki, Onecemore, Yucmed Store, and Chenghai's Reply in Supp. of their Mot. to Dismiss Compl. and Vacate Court's Order Authorizing Alt. Service, ECF No. 120 (declining to oppose Plaintiff's application to amend its pleadings). Accordingly, Plaintiff "ought to be afforded an opportunity to test his claim on the merits," *see Williams*, 659 F.3d at 213, and its request to amend is granted.

## V. Sanctions

Plaintiff seeks sanctions against TKD attorneys pursuant to this Court's inherent powers. *See* Pl.'s Mem. of L. in Supp. of Pl.'s Renewed Mot. for Attach. & Sanctions 7 ("Sanctions Br."), ECF No. 61. Specifically, it seeks "sanctions in the form of the excess fees that Spin Master has expended on its renewed motion for attachment and sanctions." Reply Mem. in Further Supp. of Pl.'s Renewed Mot. for Attach. & Mot. for Sanctions 7, ECF No. 79. For the reasons discussed below, the Court concludes that TKD attorneys' conduct was sanctionable and grants in part Plaintiff's requested relief.

### A. Legal Standard

"[A]ny decision to impose sanctions" must be "made with restraint and discretion. *In re Peters*, 642 F.3d 381, 384 (2d Cir. 2011). "[C]ourts have the inherent power to sanction attorneys given the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Palmer v. Simon's Agency, Inc.*, 833

F. App'x 838, 839 (2d Cir. 2020).  The court's "inherent sanctioning powers include the power

to impose relatively minor non-compensatory sanctions on attorneys appearing before the court

in appropriate circumstances."  *In re Sanchez*, 941 F.3d 625, 628 (2d Cir. 2019).  Where an

attorney acts "on behalf of a client," a bad faith showing is necessary, but where an attorney was

"negligent or reckless" in his or her "failure to perform his or her responsibility as an officer of

the court," bad-faith conduct need not be demonstrated.  *United States v. Seltzer*, 227 F.3d 36,

41-42 (2d Cir. 2000).  In other words, "when the district court invokes its inherent power to

sanction misconduct by an attorney that involves that attorney's violation of a court order or

*other misconduct that is not undertaken for the client's benefit*, the district court need not find

bad faith before imposing a sanction under its inherent power."  *Id.* at 42 (emphasis added).

"[H]owever, a sanction of attorneys' fees—whether premised on a lawyer's representational or

non-representational conduct—must always be supported by a finding of bad faith."  *Rossbach v.

Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023).

## B. Application

TKD attorneys negligently or recklessly failed to perform their responsibilities as officers

of the Court when they erroneously appeared on behalf of Unrepresented Defendants, submitted

filings on their behalf, and made arguments on their behalf on the record.  As discussed *supra*,

TKD filed notices of appearance on behalf of all Defendants on September 29, 2023.  *See* Lekht

Notice of Appearance, Berkowitz Notice of Appearance.  On November 1, 2023, TKD filed a

motion to withdraw as attorneys for Yucmed Store and the two Unrepresented Defendants,

explaining that its representation of these Defendants had been in error.[11]  *See* Mot. to Withdraw.

---

[11] As discussed *supra*, Yucmed Store was, at the time, included in the group of Unrepresented
Defendants, alongside Aomore-US and Ropwol.  TKD erroneously appeared on its behalf,
before Yucmed Store retained its services.  TKD has since been retained by Yucmed Store.  *See*
ECF No. 67.

In the intervening month during which TKD purported to represent all Defendants, TKD attorneys (1) filed a Rule 7.1 corporate disclosure statement purporting to disclose information on behalf of all defendants, ECF No. 31; (2) emailed opposing counsel on behalf of all Defendants, Skale Decl. Ex. C at 2, ECF No. 62-3; (3) appeared on the record before the Court on behalf of all Defendants, *see generally* Oct. 30, 2023, Tr.; (4) argued the significance of evidence pertaining to one of the Unrepresented Defendants, *id*. at 23:3-18; (5) represented to the Court that it could provide addresses for the Unrepresented Defendants, *id.* at 31:5-7, 37:16-18; (6) filed requests on behalf of all Defendants for expedited discovery and an adjournment of time to answer, ECF No. 46; and (7) issued subpoenas on behalf of one of the Unrepresented Defendants, Skale Decl., Exs. D & E, ECF Nos. 62-4, 62-5.

While TKD acknowledges that its actions were in error, it fails to explain how its "mistake" did not amount to negligent or reckless failure to perform its responsibility as an officer of the court, particularly given, *inter alia*, its apparent failure to meet (1) its obligation under New York Compiled Codes, Rules, & Regulations. tit. 22, § 1215.1 to obtain signed engagement letters from each of its clients, and (2) its ethical and professional obligation under New York Rules of Professional Conduct 1.3, 1.4, 1.16, and 1.18 to communicate with Unrepresented Defendants prior to claiming to represent them. TKD's mistake is particularly problematic given the presence of several circumstances that should have signaled to it that it did not represent all Defendants, e.g., (1) prior counsel, Feigin, stated clearly that he did not represent Yucmed Store and Unrepresented Defendants, Skale Decl. Ex. A at 2, and (2) the Alternative Service Order required separate email service on Unrepresented Defendants, while Represented Defendants could be served via counsel, Alt. Service Order.

TKD's first argument—that its misrepresentation was not in "bad faith," *see* Opp'n to Pl.'s Renewed Mot. for Attach. and Sanctions ("Sanctions Opp'n") 7-12, ECF No. 77—has no

bearing here, as a "bad faith" showing is only necessary where an attorney acts "on behalf of a client." *Palmer*, 833 F. App'x at 839. TKD cites no caselaw to support the proposition that mistakenly appearing and acting on behalf of unrepresented defendants should somehow be construed as for the benefit of an attorney's actual clients.

However, TKD's second argument—that to receive compensatory fees, Plaintiff was required to but failed to demonstrate that it was harmed by TKD's misrepresentations, *see* Sanctions Opp'n 12—is well-taken. "[P]retty much by definition, . . . the court can shift only those attorney's fees incurred *because of* the misconduct at issue. Compensation for a wrong, after all, tracks the loss resulting from that wrong." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (emphasis added). Courts are reluctant to award fees and costs in the absence of actual damages for fear of encouraging an "'excessively litigious approach.'" *See In re Sturman*, No. 10 Civ. 6725, 2011 WL 4472412, at *3 (S.D.N.Y. Sep. 26, 2011) (*citing In re Saratoga Springs Plastic Surgery, PC*, No. 03 Civ. 896, 2005 WL 357207, at *5 n.4 (N.D.N.Y. Feb. 11, 2005); *accord in re Whitt*, 79 B.R. 611, 616 (Bankr. E.D. Pa. 1987) (concluding such awards "are allowable only to embellish actual damages"). As explained above, the Court denies Plaintiff's motions for attachment and for a default judgment without prejudice because it concludes that service was improper; accordingly, the Court's denial is not the result of TKD's misrepresentations. The Court therefore cannot award Plaintiff its requested relief of "excess fees" caused by those misrepresentations. Sanctions Br. 9.

That is not, however, the end of the Court's analysis. Pursuant to the Court's "inherent sanctioning powers," it may "impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances." *In re Sanchez*, 941 F.3d at 628. Appropriate circumstances may include those in which a party has "interfere[d] with the court's power to manage its calendar and the courtroom." *Seltzer*, 227 F.3d at 42. Here, TKD took

positions on behalf of entities it did not represent, made arguments it had no standing to make, and caused a "waste of judicial time and resources." *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17 Civ. 840, 2021 WL 2414872, at *4 (S.D.N.Y. June 11, 2021). That is sufficient for the Court to impose nominal sanctions. *See Seltzer*, 227 F.3d at 41 (granting sanctions "absent a finding of bad faith" given "a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court"); *see also Bao Guo Zhang*, 2021 WL 2414872, at *4 (granting sanctions under the Court's inherent powers and absent a showing of bad-faith conduct where a litigant was not an attorney's client at the time that the attorney filed an opposition purportedly on that litigant's behalf).

The Court therefore imposes nominal sanctions in the amount of $500. "The Court finds that a $500 sanction will promote respect for the litigation process without creating a chilling effect on attorney creativity or advocacy." *Palmer v. Simon's Agency, Inc.*, No. 19 Civ. 114, 2020 WL 1332829, at *5 n.5 (N.D.N.Y. Mar. 23, 2020), *adhered to on reconsideration*, No. 19 Civ. 114, 2020 WL 2129264 (N.D.N.Y. May 5, 2020), *aff'd*, 833 F. App'x 838 (2d Cir. 2020); *see also Jianshe Guo v. A Canaan Sushi Inc.*, No. 18 Civ. 4147, 2019 WL 1507900, at *4 (S.D.N.Y. Apr. 5, 2019) (ordering counsel "to pay a small monetary sanction to the Court" sufficient "to deter counsel from repeating their delinquent conduct in any other or future case").

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to effectuate service of process, and therefore **ORDERS** as follows:

- The Motion to Vacate the Alternative Service Order is **GRANTED**.

- Service on the Defendants is **QUASHED**.

- The Motion for Preliminary Injunction is **DENIED**, without prejudice to renewal.

34

- The Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**, without prejudice to renewal.

- Plaintiff's Motion to Amend is **GRANTED**.  Plaintiff shall file its amended complaint within **thirty (30) days** of this Order.

- The Motion for Attachment against the Unrepresented Defendants is **DENIED**, without prejudice to renewal.

- The Motion for Default Judgment against the Unrepresented Defendants is **DENIED**, without prejudice to renewal.

- The Motion for Sanctions is **GRANTED IN PART**.  The Court **ORDERS** that, within **fourteen (14) days** of the date of this Memorandum Decision and Order, TKD attorneys shall mail a check, in the amount of $500, payable to the Clerk of the Court, at the following address:

  > Clerk of the Court
  > U.S. District Court
  > Southern District of New York
  > Daniel Patrick Moynihan U.S Courthouse
  > 500 Pearl Street
  > New York, New York 10007

- Plaintiff shall begin the process of properly effectuating service on Defendants, in compliance with the Hague Convention, within **thirty (30) days** of this Order.  And/or in the alternative, Plaintiff may renew its motion for alternative service under Rule 4(f)(3) as to any Represented or Unrepresented Defendant, based on a showing that it has exercised reasonable diligence in ascertaining Defendants' addresses, but that they remain unknown for purposes of the Hague Convention.

The Clerk of Court is directed to terminate ECF Nos. 60, 68, 81, and 84.

SO ORDERED.

Dated: June 17, 2024
       New York, New York

_____

DALE E. HO
United States District Judge