**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SPIN MASTER, LTD.

         Plaintiff,

  - against -

AOMORE-US; XIAOGAN LEQIONG TRADING
CO., LTD. (a/k/a LEQIONG); ZHONGXIANG
HENGHAO TRADING CO., LTD. (a/k/a MONKKI);
SHENZHEN JINFAN MEDIA CO., LTD. (a/k/a
ONECEMORE); SHENZHEN LIHENGTAI
TECHNOLOGY TRADING CO., LTD. (a/k/a
ROPWOL); ENSHI NIUSHUANG TRADING CO.,
LTD. (a/k/a YUCMED); and SHANTOU CHENGHAI
DISTRICT LEQIBAO TOY CO., LTD. (a/k/a
CHENGHAI LUCKY BOY TOYS CO., LTD.),

         Defendants.

Case No. 23 Civ. 7099 (DEH)

Hon. Dale E. Ho

**PLAINTIFF'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF MOTION FOR CONTEMPT</u>**

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.

Kevin N. Ainsworth
Kara M. Cormier
919 Third Ave.
New York, NY 10022
Tel: (212) 935-3000
kainsworth@mintz.com
kmcormier@mintz.com

Andrew D. Skale (*pro hac vice*)
3580 Carmel Mountain Rd., Ste 300
San Diego, California 92130
Tel: (858) 314-1500
adskale@mintz.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ..................................................................................................1

LEGAL STANDARD...............................................................................................................7

I.    CIVIL CONTEMPT ......................................................................................................7

II.   SANCTIONS FOR CIVIL CONTEMPT .........................................................................10

ARGUMENT............................................................................................................................11

I.    CLBT SHOULD BE FOUND IN CIVIL CONTEMPT......................................................11

      A.    The PI Order is Clear and Unambiguous................................................................11

      B.    CLBT Is Violating the PI Order.............................................................................12

      C.    CLBT Has Not Been Reasonably Diligent in Attempting to Comply...................14

II.   SANCTIONS AND ATTORNEYS' FEES AND COSTS ARE WARRANTED ............15

CONCLUSION........................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aquavit Pharms. v. U-Bio Med, Inc.*,
  2019 U.S. Dist. LEXIS 217639 (S.D.N.Y. Dec. 16, 2019) ............................................. *passim*

*Broker Genius Inc. v. Gainor*,
  810 F. App'x 27 (2d Cir. 2020) ...............................................................................6, 7, 11, 12

*Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*,
  869 F.2d 34 (2d Cir. 1989)......................................................................................................6

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
  2007 U.S. Dist. LEXIS 75812 (S.D.N.Y. Oct. 10, 2007) ...................................................9, 14

*Flawless Style LLC v. Saadia Grp. LLC*,
  2025 U.S. Dist. LEXIS 192546 (S.D.N.Y. Sep. 29, 2025)............................................. *passim*

*Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.*,
  2025 U.S. Dist. LEXIS 216454 (S.D.N.Y. Nov. 3, 2025).......................................6, 7, 10, 11

*Huber v. Marine Midland Bank*,
  51 F.3d 5 (2d Cir. 1995).....................................................................................................8, 12

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004).....................................................................................6, 8, 13, 14

*PowX Inc. v. Performance Sols., LLC*,
  2026 U.S. Dist. LEXIS 43627 (S.D.N.Y. Mar. 3, 2026) ............................................. *passim*

**Federal Statutes**

18 U.S.C. § 401..............................................................................................................................1, 8

Plaintiff Spin Master, Ltd. ("Spin Master") submits this Memorandum of Law, together with the Declaration of Kara Cormier, Esq., executed April 30, 2026, ("Cormier Decl.") and all exhibits thereto, in support of its motion by Order to Show Cause to hold Defendant Chenghai Lucky Boy Toys ("CLBT") in civil contempt and to sanction CBLT pursuant to 18 U.S.C. § 401 for violating this Court's Preliminary Injunction (ECF 209) (the "PI Order").

## PRELIMINARY STATEMENT

The PI Order prohibits CLBT from engaging in conduct that infringes Plaintiff's rights in U.S, Patent No. 7,753,755, including offering for sale, selling, and/or importing infringing products into the United States. Notwithstanding the PI Order, CLBT has willfully continued to offer infringing products for sale in the United States through online commercial channels accessible to U.S. consumers, including Alibaba. Spin Master therefore seeks a finding that CLBT is in contempt, sanctions for CBLT's willful noncompliance, disgorgement of profits, attorneys' fees and costs incurred in connection with this contempt, and any other such remedy as the Court deems just and proper to enforce the PI Order.

## FACTUAL BACKGROUND

Spin Master commenced this action to prevent infringement of its patents covering wall-climbing toy cars. Defendant CBLT is a manufacturer in China of the infringing products and has sold them for resale in the United States.

On February 24, 2026, after taking evidence and hearing the parties' preliminary injunction arguments, the Court entered the PI Order against CLBT (and other Defendants).

The PI Order enjoins CLBT from:

a. Making, using, offering to sell, or selling within the United States, or importing into the United States, or actively inducing others to make, use, offer to sell, sell within the United States, or import into the United States any of the Accused Products; and

1

   b. Assisting or enabling any third party – including but not limited to Amazon, Walmart, Target, Temu, AliExpress, or fulfillment centers – to import, distribute, sell, offer for sale, or otherwise facilitate the sale in the United States of Accused Products.

ECF 209 at 7. The PI Order also provides that: "Any violation of this Order may be considered and prosecuted as in contempt of this Court." *Id.* at 8. It further provides that within 10 days of the PI Order (i.e. by March 6, 2026), Defendants had to: "(a) provide Plaintiff with a sworn accounting of all inventory of the Accused Products located in the United States <u>or abroad</u>; and (b) notify all resellers, distributors, and fulfillment partners of this injunction." *Id.* at 8.

The PI Order defines the Accused Products as including, *inter alia*, "the following products and any other products that are no more than colorably different" "regardless of channel of sale":



2

*See* ECF 209 (showing above images of the Accused Products and listing other identifying information from Walmart and/or Amazon, including model number LQB-88 for the gecko).

CBLT failed to comply with the February 24, 2026 PI Order in two respects. *See* Cormier Decl., Ex. L at 3-4. First, CBLT continues to offer the Accused Products for sale in the United States through online listings on Alibaba. *Id.* at ¶ 2 & Exs. A-K. Second, CBLT apparently failed to "notify all resellers, distributors, and fulfillment partners of this injunction."

Moreover, CLBT was far from proactive in seeking to comply with the PI Order. On March 6, 2026, Defendants sent "inventory information" that lacked the sworn accounting and did not indicate whether the information covered the US and abroad. *Id.* Defendants also failed to indicate whether they had notified resellers, distributors, and fulfillment partners of the terms of the injunction. *Id.* Plaintiff's counsel promptly notified Defendants' counsel that what he had sent did not comply with the PI Order. *Id.* After repeated follow-ups, Defendants' counsel stated that he was working on the documents. *Id.* On March 11, Plaintiff notified Defendants that they were in contempt. *Id.* On March 13, 2026, Defense counsel finally provided the required declarations, but did not inform Plaintiff that resellers, distributors, and fulfillment partners had been notified of the terms of injunction. *Id.*

After more follow ups, Defendants' counsel represented on April 1, 2026 that "all the resellers, distributors, and fulfillment partners" have "been notified of the PI." *Id.* This representation appears to have been false. Indeed, as discussed above, as of the date of this filing, CLBT continues to offer the Accused Products for sale in the United States through online listings on Alibaba. *Id.* at ¶ 2 & Exs. A-K. On its products page, CLBT lists no less than seven different infringing products for sale in the United States, some of which come in multiple color options. *Id.* at ¶¶ 4-11 & Exs. C-J. These products include the gecko (with the same model number as the one listed in the PI Order), multiple versions of the wall climbing car that are identical to that listed

3

in the PI Order (or color variants), and the very same wall climbing spider. *Id.* Each page indicates

that delivery is available to the United States:



*Id.*, Exs. D-J. Each page also includes a "California Proposition 65 Consumer Warning," which

further indicates that the products are for sale in the United States:



*Id.* Moreover, CLBT's representative confirmed that the product shown in Exhibit I is available

for shipping to the United States upon placement of a minimum order quantity:



*Id.*, Ex. K. And upon further inquiry, she again confirmed that shipping was for the United States:

4



*Id.* Photos of these products follow.

**Exhibit D**

  

**Exhibit E**



5

**Exhibit F**



**Exhibit G**



**Exhibit H**



**Exhibit I**




**Exhibit J**




## LEGAL STANDARD

### I.     Civil Contempt

"The standards applicable to a motion for civil contempt are well-settled." *Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.*, 2025 U.S. Dist. LEXIS 216454, at \*9 (S.D.N.Y. Nov. 3, 2025). "A court possesses the inherent power to hold a party in civil contempt when (1) the order the party failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not been reasonably diligent and energetic in attempting to comply." *PowX Inc. v. Performance Sols., LLC*, 2026 U.S. Dist. LEXIS 43627, at \*9 (S.D.N.Y.

7

Mar. 3, 2026) (citing *EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985)); *accord Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004); *Broker Genius Inc. v. Gainor*, 810 F. App'x 27, 33 (2d Cir. 2020). It is not necessary to "establish[] that the violation was willful" for a court to award sanctions. *Paramedics*, 369 F.3d at 655 (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)); *see also Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 39 (2d Cir. 1989) ("sanctions for civil contempt can be imposed without a finding of willfulness").

An order is "clear and unambiguous" where it "leaves no uncertainty in the minds of those to whom it is addressed" and permits them "to ascertain from the four corners of the order precisely what acts are forbidden." *Aquavit Pharms. v. U-Bio Med, Inc.*, 2019 U.S. Dist. LEXIS 217639, at *16 (S.D.N.Y. Dec. 16, 2019) (*quoting King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). Put differently, an order satisfies this element where it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *PowX*, 2026 U.S. Dist. LEXIS 43627, at *9-10. "A party's subjective belief that [it] was complying with an order" will not insulate it "from civil contempt if that belief was objectively unreasonable." *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *18. Moreover, a contemnor's attempts to manufacture ambiguities where there are none will not defeat a finding of clarity. *Flawless Style LLC v. Saadia Grp. LLC*, 2025 U.S. Dist. LEXIS 192546, at *38 (S.D.N.Y. Sep. 29, 2025) (rejecting "that any ambiguity existed as to the permissibility of [] sales on the [] website").

Proof of noncompliance is clear and convincing when it is "adequate to demonstrate a reasonable certainty that a violation occurred." *Hinchliffe*, 2025 U.S. Dist. LEXIS 216454, at *9 (*quoting Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)). Courts in this Circuit routinely find this burden satisfied where a defendant continues to offer or sell the very products

8

the injunction proscribes. *See, e.g., Broker Genius*, 810 F. App'x at 33-34 (affirming contempt finding where defendants continued to make available a product that was "one [and] the same product" as the enjoined product); *PowX*, 2026 U.S. Dist. LEXIS 43627, at *10-11 (finding contemnor "unquestionably violated the preliminary injunction order by 'offering for sale' the enjoined product"); *Flawless Style,* 2025 U.S. Dist. LEXIS 192546, at *39-40 (finding clear and convincing evidence of noncompliance where defendant continued selling enjoined merchandise on its websites and plaintiff submitted screenshots from the websites). Notably, "[t]he court is not required to credit the alleged contemnor's denials if it finds them to be incredible in context." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).

The third element is satisfied where the contemnor has "not diligently attempted to comply in a reasonable manner." *Paramedics*, 369 F.3d at 655. To assess this factor, "the court must determine 'whether defendants have been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *16-17 (quoting *Powell v. Ward*, 487 F. Supp. 917, 933 (S.D.N.Y. 1980), *aff'd and modified*, 643 F.2d 924 (2d Cir. 1981)). A defendant is not reasonably diligent when it ignores a court order "or take[s] only superficial actions that 'strain' both the language and intent of the order." *Id.* "It is even more troubling when a defendant takes actions 'that contravene the provisions of the order.'" *Id.* Courts in this District have found that piecemeal or reactive compliance—even if coupled with partial or belated compliance where a defendant only cures violations after being confronted—does not constitute reasonable diligence. *Id*. at *15, *20-21 (noting that defendants "have continued to violate the Injunction in multiple ways" and "[t]aking some steps to cure but approaching compliance reactively rather than proactively does not constitute 'reasonable diligence.'"); *see also Flawless Style*, 2025 U.S. Dist. LEXIS 192546, at *42 (finding belated attempt to comply

9

"seven months after [the] Order's entry and a month after [movant] moved for sanctions" was "too little, too late").

## II.        Sanctions for Civil Contempt

Once a finding of contempt is made, the Court is empowered to grant sanctions, attorneys' fees and costs and to impose whatever additional terms may be necessary to compel compliance. *See* 18 U.S.C. § 401. "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics*, 369 F.3d at 657; *see also Flawless Style*, 2025 U.S. Dist. LEXIS 192546, at *34 (same). "District courts have discretion to award appropriate attorneys' fees and costs to the victims of contempt and are especially likely to do so when the violation of the Court's order was willful." *Flawless Style*, 2025 U.S. Dist. LEXIS 192546, at *42-43; *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *28 ("'Since the plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation of the decree is found to be willful.'") (*quoting Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979)). "A willful contempt is one where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2007 U.S. Dist. LEXIS 75812, at *12 (S.D.N.Y. Oct. 10, 2007); *see also Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *27-28 (awarding attorneys' fees and costs where defendants acted "willfully in violating the Injunction").

**ARGUMENT**

**I.        CLBT Should be Found in Civil Contempt**

        **A.        The PI Order is Clear and Unambiguous**

The PI Order clearly and unambiguously enjoins CLBT from "[m]aking, using, offering to sell, or selling within the United States, or importing into the United States" any of the Accused Products, and from "[a]ssisting or enabling any third party" to do so. ECF 209 at 7. It further defines the Accused Products by name, model number, **and image**—including wall climbing cars, a gecko, and a wall climbing spider—and extends to "any other products that are no more than colorably different," "regardless of channel of sale." *Id.* The Order also required CLBT to provide a sworn accounting of all inventory and to notify all resellers, distributors, and fulfillment partners of the injunction within ten days. *Id.* at 8. There is nothing vague or uncertain about these directives. Because the PI Order "leaves no uncertainty in the minds of those to whom it is addressed" and permits CLBT "to ascertain from the four corners of the order precisely what acts are forbidden," *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *16, it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *PowX*, 2026 U.S. Dist. LEXIS 43627, at *9-10. In short, CLBT cannot plausibly claim that it did not understand what was required of it.

Courts will not credit excuses that are "specious" or that attempt to manufacture distinctions where the injunction "contains no exception" for the conduct at issue. *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *14-15, *18-19. Moreover, it does not matter that CLBT has appealed the PI Order to the Federal Circuit. It is "axiomatic that a court order must be obeyed … until it is properly set aside." *Hinchliffe*, 2025 U.S. Dist. LEXIS 216454, at *3 & n.2 (*quoting Leighton v. Paramount Pictures Corp.*, 340 F.2d 859, 861 (2d Cir. 1965)).

### B.    CLBT Is Violating the PI Order

The record shows clear and convincing evidence that CLBT is violating the PI Order. Despite the Court's express prohibition on offering the Accused Products for sale in the United States, CLBT has continued to do exactly that. As of the date of this filing, CLBT maintains active product listings on Alibaba for no fewer than seven different infringing products—including the gecko (bearing the same model number identified in the PI Order), multiple versions of the wall climbing car identical to (or color variants of) those listed in the PI Order, and the very same wall climbing spider. Cormier Decl. ¶¶ 2, 4-11 & Exs. C-J.  Each listing indicates that delivery is available to the United States. *Id.*, Exs. D-J. Each listing also includes a "California Proposition 65 Consumer Warning," which further confirms that the products are directed to U.S. consumers. Id. Moreover, CLBT's own contact person confirmed that the product shown in Exhibit I is available for shipping to the United States upon placement of a minimum order quantity. *Id.*, Ex. K. This is not a case of ambiguity or colorable difference. As the above photos show, CLBT is offering the very same Accused Products that the PI Order forbids.

This is exactly the type of post-injunction conduct that courts in this District have repeatedly found to violate orders prohibiting "offering for sale" or maintaining U.S.-accessible online sales channels for enjoined products.

For example, in *Broker Genius*, the Second Circuit affirmed the district court's contempt finding where the injunction was "clear and unambiguous in enjoining defendants from 'using or providing or making available'" the enjoined product, and defendants attempted to circumvent the injunction by creating a new product that "shared all the features" of the enjoined product. 810 F. App'x at 33-34. The court found that the new product was "one [and] the same product" as the enjoined product, and that defendants' "requests for clarification were disingenuous." *Id.* at 34. Likewise, in *PowX*, the court found contempt where the contemnor arranged a liquidation sale of

12

over 31,000 units of the enjoined product, holding that this "unquestionably violated the preliminary injunction order by 'offering for sale' the enjoined product." 2026 U.S. Dist. LEXIS 43627, at *10-11. And in *Flawless Style*, the court held a defendant in contempt where it continued selling merchandise bearing the enjoined trademarks on its websites, finding that the defendant's "excuses for noncompliance based on feigned lack of awareness" were "'incredible in context.'" 2025 U.S. Dist. LEXIS 192546, at *44-45 (quoting *Huber*, 51 F.3d at 10).

Similarly, courts have found the continued offer for sale on websites accessible in the United States is itself enough for a finding of contempt. *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *10-11 (finding defendants violated injunction by continuing to make website accessible to U.S. customers); *Hinchliffe*, 2025 U.S. Dist. LEXIS 216454, at *12-13 (certifying facts for contempt where defendants failed to remove infringing content from websites and social media accounts and "deliberately ignored the Preliminary Injunction Order").

Here, CLBT's conduct is at least as egregious as that of the contemnors in *Broker Genius*, *PowX*, *Flawless Style*, and *Aquavit*—if not more so. Unlike the defendant in *Broker Genius*, who at least attempted to create a nominally different product, CLBT has not even tried to disguise its violations; it is offering the identical Accused Products, bearing the same model number (as to the Gecko), on a website accessible to U.S. consumers. Cormier Decl. at ¶¶ 4-11 & Exs. C-J. As in *PowX*, where offering the enjoined product for sale "unquestionably violated" the injunction, 2026 U.S. Dist. LEXIS 43627, at *10-11, CLBT's continued Alibaba listings constitute a plain violation of the PI Order's prohibition on "offering to sell" and "selling" Accused Products in the United States. And as in *Flawless Style* and *Aquavit*, CLBT's continued operation of online product listings accessible to U.S. customers—complete with U.S. delivery options and California Proposition 65 warnings—establishes noncompliance by clear and convincing evidence. *See Flawless Style*, 2025 U.S. Dist. LEXIS 192546, at *39-40 (finding clear and convincing proof of

13

contempt in screen shots of defendant's website showing items for sale); *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *10-11. Any denials by CLBT would be "incredible in [this] context." *Huber*, 51 F.3d at 10.

### C.     CLBT Has Not Been Reasonably Diligent in Attempting to Comply

CLBT has not been reasonably diligent in attempting to comply with the PI Order. To the contrary, its conduct reflects a pattern of delay, evasion, and outright defiance. CLBT failed to comply with the PI Order's requirement to provide a sworn accounting of all inventory within ten days and to provide notice of the PI to resellers, distributors, and fulfillment partners. Cormier Decl., Ex. L at 3-4. When CLBT submitted "inventory information" on March 6, 2026, it lacked the required sworn accounting and failed to indicate whether it covered inventory in the United States and abroad. *Id.* CLBT also failed to confirm that it had notified resellers, distributors, and fulfillment partners of the injunction, as the PI Order required. *Id.* Only after Plaintiff's counsel repeatedly followed up and notified CLBT on March 11, 2026 that it was in contempt did Defense counsel provide the required declarations on March 13, 2026. *Id.* Even then, Defendants did not confirm that resellers, distributors, and fulfillment partners had been notified until April 1, 2026— more than five weeks after the PI Order was entered—and that representation appears to have been false, given CLBT's continued Alibaba listings. *Id.* at ¶ 2 & Exs. A-K.

This is the very definition of "piecemeal or reactive compliance" that courts in this District have held insufficient to establish reasonable diligence. *See Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *15, *20-21. Yet, it is worse: CLBT actively continued to offer the Accused Products for sale in the United States while simultaneously representing to the Court and to Plaintiff that it was in compliance. Such conduct "contravene[s] the provisions of the order" and is "even more troubling" to courts assessing diligence. *Id.* at *16-17. As in *Flawless Style*, where the court found

belated compliance "too little, too late," 2025 U.S. Dist. LEXIS 192546, at *42, CLBT's grudging, incomplete, and ultimately false compliance efforts cannot satisfy its burden.

## II.    Sanctions and Attorneys' Fees and Costs are Warranted

CLBT's contempt of the PI Order warrants the imposition of sanctions, attorneys' fees and costs, and disgorgement of profits. The Court has broad discretion to fashion appropriate remedies, both to "secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics*, 369 F.3d at 657. Here, both objectives support sanctions.

First, CLBT's violation of the PI Order was willful. CLBT had actual notice of the PI Order: the Order was entered on February 24, 2026 and served on Defendants' counsel. CLBT was able to comply—removing product listings from Alibaba requires no more than a few clicks—yet it chose not to do so. CLBT did not seek to have the PI Order modified or stayed. And CLBT did not make a good faith effort to comply; to the contrary, it continued to offer the Accused Products for sale in the United States months after the PI Order was entered, all while representing to Plaintiff that it had notified its distributors and fulfillment partners of the injunction. Cormier Decl., Ex. L at 3-4 & ¶ 2 & Exs. A-K. Under these circumstances, CLBT's contempt is plainly "willful." *See Fendi*, 2007 U.S. Dist. LEXIS 75812, at *12; *Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *27-28.

Accordingly, Spin Master is entitled to its reasonable attorneys' fees and costs incurred in prosecuting this contempt. "District courts have discretion to award appropriate attorneys' fees and costs to the victims of contempt and are especially likely to do so when the violation of the Court's order was willful." *Flawless Style*, 2025 U.S. Dist. LEXIS 192546, at *42-43; *see also Aquavit*, 2019 U.S. Dist. LEXIS 217639, at *28. Here, CLBT's willful and ongoing violations of the PI Order have forced Spin Master to incur substantial fees and costs to vindicate its rights and

15

enforce the Court's order. These fees should be awarded to make Spin Master whole. Spin Master seeks leave to submit evidence of its fees and costs after any hearing or decision on this motion.

In addition, the Court should order CLBT to disgorge any profits earned from the sale of Accused Products in violation of the PI Order. Disgorgement is an appropriate remedy to ensure that CLBT does not benefit from its contemptuous conduct and to deter future violations. *See Paramedics*, 369 F.3d at 657. Finally, the Court should impose any additional sanctions it deems necessary and appropriate to compel CLBT's compliance with the PI Order going forward.

## CONCLUSION

The Court should grant Spin Master's motion, hold CLBT in civil contempt for violating the PI Order, and award Spin Master sanctions including disgorgement of profits, reasonable attorneys' fees and costs incurred in connection with this contempt proceeding, and any other relief the Court deems just and appropriate to enforce compliance with the PI Order.

DATED: May 5, 2026                    Respectfully submitted,

                                     MINTZ, LEVIN, COHN, FERRIS,
                                       GLOVSKY AND POPEO, P.C.

                                     */s/ Kevin N. Ainsworth*
                                     Kevin N. Ainsworth
                                     Kara M. Cormier
                                     919 Third Ave.
                                     New York, NY 10022
                                     Tel: (212) 935-3000
                                     kainsworth@mintz.com
                                     kmcormier@mintz.com

                                     Andrew D. Skale (*Pro Hac Vice*)
                                     3580 Carmel Mountain Road, Suite 300
                                     San Diego, CA 92130
                                     Tel: (858) 314-1500
                                     adskale@mintz.com

                                     *Attorneys for Plaintiff*
                                     SPIN MASTER, LTD.

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2026, my office served a true and correct copy of the foregoing document on all counsel of record via ECF.

Dated: May 5, 2026

/s/ Kevin N. Ainsworth
Kevin N. Ainsworth

17